617 So.2d 137 (1993)
Louis S. HAYDEL and Hazel T. Haydel
v.
COMMERCIAL UNION INSURANCE COMPANY, et al.
No. 92-CA-995.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1993.
Writ Denied June 4, 1993.
*138 David W. Robinson, Baton Rouge, for plaintiffs/appellees/appellants.
Edward A. Rodrigue, Terry B. Deffes, New Orleans, for defendants/appellants/appellees.
*139 Steven F. Griffith, Sr., Destrehan, for defendant/appellee.
Before KLIEBERT, C.J., and WICKER and GOTHARD, JJ.
GOTHARD, Judge.
This case arises from a collision between a private car and a sheriff's vehicle in St. Charles Parish. A bifurcated trial was held in which the plaintiffs' claims against the sheriff's insurer were tried before a jury, while claims against the St. Charles Parish Sheriff, a sheriff's deputy, and the Sheriff's Office were tried before a judge in a simultaneous proceeding. Judgment was rendered according to both the trial court's decision and the jury verdict; however, the two sets of findings are contradictory. The plaintiffs have taken a devolutive appeal and the defendants have appealed suspensively. The plaintiffs have also answered the appeal.

Standard of Review
The circuits have disagreed on solutions for resolving inconsistency in the findings of judge and jury in a bifurcated trial. In American Cas. v. Illinois Cent. Gulf R., 601 So.2d 712, 715 (La.App. 5th Cir.1992), writ denied 604 So.2d 1005 (La.1992), this court considered the issue and set out a detailed summary of the jurisprudence. It then resolved a conflict between the judge's and jury's decisions by adopting the method followed by the Third Circuit. In Felice v. Valleylab, Inc., 520 So.2d 920, 924 (La.App. 3rd Cir.1987), writ denied 522 So.2d 562 (La.1988), that court set out the rule as follows:
In a bifurcated trial where the jury and the trial judge reach conflicting findings of fact and there is an appeal, the court of appeal should resolve these differences and render a single harmonized decision based on the record as a whole. Bishop v. Shelter Insurance Co., 461 So.2d 1170 (La.App. 3rd Cir.1984) writ denied 465 So.2d 737 (La.1985). In such a situation the manifest error rule is inapplicable and the court of appeal must decide which decision is more reasonable after a careful examination of the record. Bishop v. Shelter Insurance Co., supra, and Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3rd Cir.1978), writ denied 366 So.2d 564 (La.1979).
See also Morales v. Tetra Technologies, Inc., 608 So.2d 282 (La.App. 3rd Cir.1992), writ denied 610 So.2d 818 (1993).

Facts
On March 5, 1990, at about 7:00 p.m. Louis and Hazel Tregre Haydel were driving west on River Road, a two lane road in Hahnville, intending to turn left toward their home on Oak Street. Just before they reached Oak Street, Mrs. Haydel asked her husband to stop at a shopping center a short distance further west. Mr. Haydel began to make a shallow turn across the highway toward the parking lot entrance. Suddenly Mrs. Haydel screamed, "He's going to hit." Haydel then saw the sheriff's vehicle about fifteen feet away. The two vehicles collided in the eastbound lane at the entrance to the parking lot.
The sheriff's vehicle was driven by Deputy Warren Lebeauf. He had been driving in the westbound lane some distance past Haydel when he saw a red pickup truck being driven fast eastbound. Lebeauf turned around into the eastbound lane, turned his flashing lights on, and began driving at 50 miles per hour or more in an attempt to catch up with the red truck. When he reached a shopping area he turned off the flashers and began looking down the intersecting streets for the truck. The headlights of both vehicles were turned on, and the speed limit in the area was 35 miles per hour.
All three persons were injured, Mrs. Haydel the most seriously, and the vehicles were heavily damaged. Mr. and Mrs. Haydel filed suit timely against the St. Charles Parish Sheriff's Office and its liability insurer, Commercial Union Insurance Company, later amending to add Johnny Marino, the St. Charles Parish Sheriff, in his official capacity and Deputy Lebeauf. The Sheriff's Office and Commercial Union filed a third party demand against Mr. Haydel and his insurer, Southern Farm Bureau Insurance Company, which was settled *140 and dismissed before trial. The trial court ordered the jury trial stricken as to Sheriff Marino, Deputy Lebeauf, and the Sheriff's Office, in accordance with LSA-R.S. 13:5105, which denies the right to a jury trial in suits against the state, or a state agency, or a political subdivision. As noted above a bifurcated trial was held, resulting in conflicting findings of fact of the judge and jury.
The judge found that: both Deputy Lebeauf and Louis Haydel were at fault in the proportion of Lebeauf 60% and Haydel 40%. Hazel Haydel was awarded $254,795.36 ($424,658.93 times 60%) and Louis Haydel $24,374.40 ($40,624.00 times 60%), both awards including medical expenses, against all defendants jointly, severally, and in solido.
The jury found that the greater fault rested with Haydel, assigning 77% to him and 23% to Lebeauf. The jury award to Hazel Haydel was $100,000 plus $24,658.93 in stipulated medical expenses, reduced by 77% fault of Haydel. The award to Louis Haydel was zero.
The plaintiffs answered the appeal before any briefs were due, fearing that their position as appellees and second appellants might create a problem in their meeting briefing deadlines. The answer to appeal asks this court to adopt the findings of the trial Judge.
The defendants/first appellants raised the following issues: 1) whether the trial court should have adopted the jury's verdict because Commercial Union is the only real party in interest; 2) whether the jury's finding of fault is more reasonable than that of the trial court; 3) whether the jury's damages awards are the more reasonable; and 4) whether interest should have been awarded in accordance with LSA-R.S. 13:5112.

Obligation to Defer to Jury Verdict
We find no merit in Commercial Union's argument to the effect that the court should have adopted the jury verdict because the insurer was the real party in interest. Commercial Union bases this argument on the fact that the Sheriff's Office enjoys a statutory limitation of liability of $500,000. The Attorney General requires the Sheriff's Office to maintain coverage of $500,000, and only Commercial Union would have to pay the judgment. The plaintiffs point out that the statutory limitation applies only to general damages and excludes medical care and related benefits, loss of earnings, and loss of future earnings. LSA-R.S. 13:5106(B)(1) and (C). Special damages would have to be paid by the public body so that the $500,000 could easily be exceeded. Consequently, it was not incumbent upon the trial judge to defer to the jury findings.

Finding of fault
Clearly, the findings of fault are in conflict, as the trial judge found Haydel to be 40% at fault and Lebeauf 60%, while the jury assigned 77% of the fault to Haydel and 23% to Lebeauf. As one would expect, the defendants' position is that the jury verdict should be adopted as the more reasonable. In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La. 1985), the court set out the following guidelines for apportioning comparative fault:
... In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought....
The courts have long recognized that a left turn is an extremely dangerous maneuver and must be executed with great caution; furthermore, that the driver of a vehicle has the right to assume that on-coming and left-turning traffic will obey the laws and allow him to continue in the lane. Jones v. Lingenfelder, 537 So.2d 1275 (La.App. 2nd Cir.1989), writ denied 539 So.2d 631 (La.1989), and cases cited therein. LSA-R.S. 32:24 allows drivers of *141 emergency vehicles certain privileges, as follows in pertinent part:
A. The driver of an authorized emergency vehicle, ... when in the pursuit of an actual or suspected violator of the law, ... may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
* * * * * *
(3) Exceed the maximum speed limits so long as he does not endanger life or property, ...
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle....
The testimony is in agreement that the sheriff's flashing lights and siren were not in use. The estimated speeds of both vehicles prior to the collision are conflicting.
Louis Haydel testified that he had slowed down to turn into Oak Street when his wife asked him to go into the parking lot entrance only 30 or 40 feet away. He coasted to a stop with his turn signal turned on, looked ahead to see if anything was coming from the opposite direction, saw nothing, checked for passing cars, then turned toward the entry. He stated that when he did see the sheriff's car it reminded him of a torpedo coming toward him. Hazel Haydel also testified that her husband stopped before turning. Ronald C. Zeringue, an eye-witness, testified that he was walking in the parking lot toward his car when he heard the squeal of brakes but could not say how far it was from the eventual collision point. He saw the police car before hearing the brakes squeal and said it was "going kind of fast," but could not estimate how fast. Zeringue said that he had also seen Haydel's vehicle before the crash and it was stopped in its own lane.
Deputy Sheriff Warren S. Lebeauf, Jr. testified that he traveled in excess of 50 miles per hour before he lost visual contact with the truck he was pursuing. He had reduced his speed well before he reached the vicinity of the shopping center and was traveling at about 35 miles per hour as he looked for the truck down the intersecting streets. However, he had not looked at the speedometer and admitted he could have been driving 40 miles per hour, maintaining that speed until he hit his brakes.
The plaintiffs' expert witness, Dr. Olin K. Dart, Jr. viewed the accident scene one week after the accident. The skid marks were still present. He made measurements there and took pictures. He also inspected both vehicles, which had been moved to a storage lot, and took measurements and photographs. Dart testified that Lebeauf applied his brakes 54 feet from the point of contact. He estimated that Lebeauf was traveling 50 to 55 miles per hour when he reached the point of contact. He assumed that Haydel had stopped before beginning his "low angle" left turn and had reached a speed of 10 miles per hour at impact.
Luther O. Cox, Jr., the defendants' expert witness, based his conclusions on photographs of the scene and of the automobiles, the depositions of Mr. and Mrs. Haydel, the investigating officer's deposition, and Dr. Dart's second deposition. He had not viewed the Haydel car.
Based on the photographs of the site, Cox concluded that Haydel had not braked at all, as there were no tire marks leading from the Haydel car to the point of impact. The sheriff's car did leave skid marks that indicated Lebeauf applied his brakes and was moving to the right of his traffic lane. The damage on the two cars indicated an almost head on collision. Cox stated that the speed of the sheriff's vehicle could be determined by the amount of damage to the two vehicles, the post-impact positions of the vehicles, and the skid distance of the sheriff's car prior to impact. The resulting calculations of speed at impact were 40 miles per hour for the sheriff's vehicle and 20 miles per hour for the Haydel car.
*142 Cox accounted for the differences in his and Dart's estimate of speed as follows:
The basic reason for our differences is he has used a higher deceleration level from the point of impact to the point of rest. We do not differ in the coefficient of friction. That is the sliding coefficient of friction where dark tire skid marks are visible. But those dark tire skid marks are not visible from the point of impact to the point of rest, which means that the vehicles didn't slow down as fast as he has indicated they would have done. This reduces the post-impact speeds that the two vehicles would have had. In other words, I'm saying they rolled more than they slid. In so doing, I have shifted the difference in energy to the input to the Pontiac [Haydel's vehicle] in that it had to have a higher speed for the damage to be at the levels that you can see in the photographs to the two vehicles.
Cox added that he had assumed a sharper angle for Haydel's turn than the 26 degrees posited by Dart.
Cox calculated the sheriff's car to have been moving at 50 miles per hour at the beginning of the tire skid marks, which Trooper Richard Hamann, the investigating officer, had measured on the night of the accident to be 54 feet long. If Cox's estimate is correct, deputy Lebeauf had driven through a commercial area at a minimum of 15 miles over the speed limit, contrary to his testimony, in which he said that after passing through a curve more than 1000 feet from the accident site he had braked to 35 miles per hour. If he was indeed driving 50 miles per hour without operating his siren or flashing lights, he was in violation of LSA-R.S. 32:24.
Both experts made calculations intended to show that one of the drivers could have avoided the accident; however, they both admitted to a margin of error of 10% and that the accuracy of their calculations was dependent on the accuracy of the information available to them. There was no suggestion that either driver was wholly without fault.
The trial judge gave the following reasons for judgment from the bench:
My reasons are that I find that LeBeauf was traveling between 50 and 60 miles per hour and at the same time searching for the traffic offender, and that his negligence was in failing to keep a proper lookout because of the distraction of searching for the offender, and in driving at an unreasonable rate of speed under the circumstances and in failing to have his flashing light operational to warn drivers of his excessive speed.
I find that Haydel intended to turn at Oak Lane, determined that the way was clear at that point, but decided to turn into the grocery store parking lot 75 feet further up and he failed to reevaluate the safety of his turn.
Our examination of the record indicates that Lebeauf was driving well in excess of the speed limit without being in an emergency situation and knowingly created a hazard for other motorists. Haydel was inattentive in turning without looking back toward oncoming traffic at a point where he could still return to his own lane. For these reasons, the trial court's apportionment of fault between Lebeauf and Haydel, with the higher percentage allotted to Lebeauf, appears to this court to be more reasonable than the jury's finding.

Damages
We also find the judgment of the trial court to be more reasonable in regard to damages. The jury made no award to Mr. Haydel for his injuries. Dr. David Vial testified that he treated him in the emergency room for fractures of the ninth and tenth ribs on the right, a myocardial contusion (bruise of the heart), and a costochondral separation, all of which resulted from the force of the impact.
Haydel also received a severe contusion from his seat belt. The chest injuries were extremely painful. The pain was exacerbated by excessive coughing that was due to a pre-existing lung condition. He was under Dr. Vial's care for more than a year, his last visit occurring in June, 1991. Dr. Vial surmised that the continuing pain was due to traumatic arthritis. Haydel testified *143 that he has pain if he exerts himself working in his garden and he must limit his physical activity.
Although a jury has much discretion in assessing damages, it errs as a matter of law by refusing to award general damages for objective injuries. Boulmay v. Dubois, 593 So.2d 769 (La.App. 4th Cir. 1992), and cases cited therein. The record supports the trial judge's award, while there is no factual or legal basis for the jury's award of zero to Mr. Haydel.
Mrs. Haydel incurred painful and permanent injuries, which included a fracture and dislocation of the hip, a fractured rib, a fractured left ankle, and a long laceration to her forehead, along with multiple contusions and abrasions. The hip fracture was at the joint where the hip goes into the pelvis and required surgery for insertion of a metal prosthesis. Dr. Walter Brent, Jr., her treating orthopedist, testified that the prosthesis will in all likelihood need replacing in ten to fifteen years. There were two breaks to the ankle at the bottom, where the tibia and fibula connect to the ankle, which required surgery. A piece of bone had sheared off and she suffered damaged fibular cartilage. She is already showing signs of degenerative changes and may need further surgery. Mrs. Haydel was hospitalized 24 days, wore a cast through August, 1990. She underwent physical therapy in the hospital and was discharged to a rehabilitation center for further treatment. Dr. Vial assigned her 20% permanent disability for the body as a whole and restricted her from long periods of standing, walking, lifting, squatting and climbing. Dr. Vial stated that while she made an excellent recovery for the amount of trauma she had, he does not expect her to improve any further. Again we find that the trial judge's assessment of damages was more reasonable than the jury award and is supported by the record.

Interest Rate
Commercial Union complains that the trial judge assessed interest on the judgment at an incorrect rate, i.e. legal interest from date of demand. The insurer avers that it should pay interest in accordance with LSA-R.S. 13:5112(C), which provides for 6% pre-judgment interest on a personal injury claim against a public body and legal interest accruing after judgment at the rate set out in LSA-C.C. art. 2924. The insurer argues that it is entitled to the reduced rate because its liability is derived from its contract with the Sheriff's Department. We find no error in the trial judge's award of interest from date of demand. Commercial Union based its right to a jury trial upon its status as a private entity and cannot now claim the benefits of a public body.
For the above reasons we reverse and set aside the judgment of the jury as to fault and damages and affirm the judgment of the trial judge in all respects.
REVERSED AND SET ASIDE IN PART, AFFIRMED IN PART, AND RENDERED.
KLIEBERT, C.J., concurs.
KLIEBERT, Chief Judge, concurring.
I concur in the results reached in the majority opinion, but not for the reasons stated in the opinion. I agree with the majority view that the manifest error for appellate review is not applicable here because of the conflicts between the trial judge and the jury opinions. However, I disagree with the majority view that under the facts here, this Court is restricted to deciding which of the two opinions is the more reasonable one, i.e., the trial judge's or the jury's. In my view, when confronted with the situation we have here, we should review the entire record and without regard to the manifest error rule, render the judgment we believe to be fair and proper. LA-C.C.P. Article 2164.