[aCANNELLA, Judge.
Defendants, Stevens Transport, Inc. (Stevens), Nathaniel Sumrall, Jr. (Sumrall) and Glazer Wholesale Drug Company of New Orleans, Inc. (Glazer), appeal from a Judgment Notwithstanding the Verdict (JNOV) in a personal injury suit filed by plaintiff, Charles E. Durham. We amend and affirm as amended.
On June 3, 1993, plaintiff, a long time veteran tractor trailer truck driver, was delivering items to Glazer’s warehouse dock in Harahan, Louisiana. As directed, he backed his rig and parked in one of two *453 “bins” within the covered docking facility. As plaintiffs rig was being unloaded, Sum-rail arrived, driving another tractor trailer and accompanied by a co-driver. Both, Sumrall and his co-driver, employed by Stevens, were trainees in the latter part of their training as tractor trailer drivers. Sumrall, however, had difficulty in positioning his truck correctly to back into the space next to plaintiffs rig. As a result, plaintiff went over to Sumrall and told him that he would direct him into the bin. At some point, the back doors of Sumrall’s truck were opened and secured to the sides in anticipation of unloading. The perimeters of the bins were actually narrower than Rwidths of the trucks, but there were neutral areas between the parking spaces. In addition, the covered area darkened as the drivers backed into the area close to the dock, making it harder to see in the mirrors. Nonetheless, plaintiff positioned himself behind and alongside the truck as it drove backwards. It became apparent that Sumrall’s trailer was going to hit plaintiffs mirror. Plaintiff yelled for him to “pull up.” Sumrall kept backing, either not hearing the command to pull up or thinking plaintiff was telling him to keep backing. At this point, Sumrall could not see plaintiff. Sumrall testified that he stopped the maneuver when he could not hear plaintiff anymore. However, at that point, plaintiff was already pinned between the back of Sum-rail’s trailer and the front of his truck cab. Instead of moving out of the way when Sumrall did not respond to his cries to pull up, plaintiff kept calling to Sumrall while walking backwards with the tráiler. As he walked backwards, he had his hand on the door of Sumrall’s trailer that was aimed at the mirror on plaintiffs truck. Sumrall immediately pulled away to release plaintiff when his co-driver told him plaintiff was pinned. The co-driver had been . standing on the opposite side of the Sum-rail cab from where plaintiff was pinned. Plaintiff was caught between the vehicles for approximately one minute.
As a result of the accident, plaintiff suffered nerve damage to the urinary system. Plaintiff had a pre-existing condition to his the bladder from an old back injury. This accident caused a different bladder problem and aggravated his ability to urinate normally.'
Shortly after the accident, plaintiff began dating his present wife, who he eventually married. During the courtship and early on in the marriage, the couple enjoyed frequent sexual relations. However, gradually, plaintiff has lost penile 1 ^sensation, which affects his enjoyment of sexual intercourse. Frustration has led to less sexual intimacy and the loss of this aspect of the relationship is upsetting to both plaintiff and his wife.
As a result of the accident, plaintiff filed suit against Stevens, Sumrall and Glazer on May 24, 1994. A jury trial was held on March 16, 17, 18 and 19, 1998. On March 19, 1998, the jury returned a verdict finding in the accident Sumrall 20% at fault and plaintiff 80% at fault. It found Stevens and Glazer not liable. The jury awarded plaintiff past medicals in the amount of $12,000, lost past wages of $5,000 and future medicals of $40,000. The jury did not award general damages. The verdict was made a judgment on March 27, 1998 and plaintiff filed a motion for JNOV or New Trial on April 3, 1998. Following a hearing on the motion, the trial judge granted the JNOV. He reapportioned fault, finding plaintiff 10% at fault, Sumrall and Stevens, together, 80% at fault and Glazer 10% at fault. The trial judge further awarded plaintiff general damages in the amount of $300,000.
Defendants, Sumrall, Stevens and Glazier appeal the judgment. They all assert that the trial judge erred in reapportioning fault under the JNOV standard and in awarding excessive general damages.
In Anderson v. New Orleans Public Service, 583 So.2d 829, 832 (La.1991), the court stated:
*454 A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which |rjs of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied ... In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. (Citations omitted)
See also: Lambert v. State Through Dept. of Transp. & Development, 96-160 (La. App. 5th Cir. 10/16/96); 683 So.2d 839, 845.
In order to determine whether liability exists under the facts of a particular case, Louisiana courts apply a duty-risk analysis. Under this analysis plaintiff must prove:
(1) the conduct in question was the cause-in-fact of the resulting harm,
(2) defendant owed a duty of care to plaintiff,
(3) the requisite duty was breached by the defendant and
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993). Whether a duty is owed is a question of law, whereas, whether defendant breached a duty owed, is a question of fact. Id. at 813.
We first address Stevens’ complaint that the trial judge erred in granting the JNOV and finding it at fault along with Sumrall. We find that the trial judge did not err by including it in the fault allocated to Sumrall. The trial judge should have included a jury charge on the Stevens’ vicarious liability. Since he failed to do so, he corrected his mistake by granting the JNOV and including Stevens in the percentage of fault attributed to Sumrall.
Next, we address Glazier’s fault. The evidence shows that the warehouse contained a dock for loading and unloading merchandise. In front of the dock are parking spaces, or bins, long enough for tractor trailer trucks. It was customary |7for these vehicles to back into the spaces so the merchandise could be directly loaded into or unloaded from the back of the trailers. Both the dock and the parking spaces are located under a covered roof and the bins are parallel to each other. There is a post dividing one section of two bins from the next section of bins. When a tractor trailer truck was parked in a parking space, the front was not completely under the roof. The spaces for the trucks were approximately 8 feet wide, while most tractor trailers of the kind in this case are 8jé feet wide. However, there is a 3 foot neutral space between the 2 bins at issue here. The testimony showed that the area contained fluorescent lighting in the ceiling, but not how many lights were working at the time of the accident.
Plaintiff and Sumrall and their co-drivers all testified that it was difficult to see backing-in because of the contrast between the daylight and the dark interior. Sum-rail stated that he could not see behind him into the warehouse by using his mirrors. Although the evidence shows that the Glazier facility was in compliance with code requirements, the practical effect of the darkened interior contrasting with the daylight makes it very difficult for the backing drivers to see behind them. This creates an unreasonable risk of harm to anyone moving about in the warehouse. Thus, we find that the trial judge did not err in assessing 10% of the fault to Glazier.
*455 We next consider the percentages of fault allocated by the trial judge to plaintiff and Sumrall. After our review, we find that the trial judge erred in his reapportionment of fault.
Before reaching the warehouse, the drivers were given an appointment time to arrive and unload their merchandise. The Glazer warehouse manager testified that the drivers were not supposed to be outside their trucks in the |Rwarehouse while the trailers were being unloaded. When Sumrall, a driver trainee, arrived for his appointment, he went to the office to find out where to park and returned to the truck. Plaintiff was already parked in his bin. When Sumrall began his backing maneuver, it became apparent that Sumrall was not going to be able to get the trailer into the space assigned for it, next to plaintiffs truck. As a result, plaintiff came up to Sumrall’s window and offered to direct him. Although Sumrall and plaintiff differed somewhat in their testimony as to whether plaintiff continued his directions, Sumrall stated that he lost sight of plaintiff in his mirrors. He continued backing because he could hear plaintiff speaking, although he could not hear what was being said. Sumrall claimed that he thought plaintiff was continuing to direct him with his voice. Sumrall stopped when he could not longer hear plaintiff. By that time his co-driver ran up and told him to drive forward because plaintiff was pinned between the trucks.
Plaintiff testified that he directed Sum-rall until he realized that the back door of the trailer, which was pushed and hooked to the outside trailer wall, was going to hit the outside mirror of his truck. Instead of getting out of the way, he continued to walk backward with his hand on the side of Sumrall’s trailer in the direction of the area that was about to be impacted, thereby placing himself between the two trucks. Even when Sumrall did not respond to plaintiffs yells to stop, plaintiff continued to back in. Plaintiff admits that he was afraid that Sumrall was going to damage his truck. He was not concerned for his own safety.
The jury found plaintiff 80% at fault for his injuries. The trial judge reapportioned his fault to 10%. This was error. These facts and inferences do not point so strongly and overwhelmingly in favor of plaintiffs minimal fault that 1 treasonable men could not arrive at a contrary verdict as to plaintiffs degree of fault. Plaintiff was an experienced tractor trailer driver. He had been driving these rigs for over 40 years. His age and experience should have cautioned him not to place himself behind a moving tractor trailer, much less when it was backing into an area of reduced visibility. Further, he exhibited no care for his own safety. Instead of getting out of the way of the backing trailer when he realized it was heading for his truck, he stayed with it, essentially placing himself between the trucks. Although he could have removed himself in time from the danger, he failed to do so for no justifiable reason. His main concern was to protect his mirror, when it should have been to protect himself. This disregard for his own safety was a significant cause of plaintiffs injuries, as found by the jury.
We also agree with the jury that Sum-rail is not free from fault. He should have used caution and not backed his trailer when he could not see plaintiff. Thus, we find that the trial judge erred in reducing plaintiffs fault to 10% and increasing Sum-rail’s fault to 80%. Because we affirm the allocation of fault to Glazier of 10%, we will reallocate plaintiffs fault to 70% and Sum-rail’s and Stevens’ fault to 10%.

GENERAL DAMAGES

“Although a jury has much discretion in assessing damages, it errs as a matter of law by refusing to award general damages for objective injuries.” Haydel v. Commercial Union Ins. Co., 617 So.2d 137, 143 (La.App. 5th Cir.1993); Boulmay v. Dubois, 593 So.2d 769 (La.App. 4th Cir.1992), and cases cited therein. Furthermore, there is no factual basis for the jury’s failure to award general damages to *456 plaintiff. Thus, the trial judge properly-granted the |inJNOV in this respect. Furthermore, our review of the record supports the trial judge’s award.
Prior to this accident, plaintiff had a pre-existing bladder condition from an earlier accident. Plaintiff suffered a broken back in a motorcycle accident in 1955. According to the medical records and testimony of plaintiff, his neurosurgeon, Dr. Lawrence Jelsma, and his urologist, Dr. James Angel, that injury left him with a uninhibited neurogenic bladder dysfunction. This was a condition in which the bladder would sometimes empty spontaneously if it got too full. The only way he was able to prevent this problem was to initiate urination by pressing on the nerve near his rectum every few hours. The urinary procedure was a simple manéuver and did not require him to remove his clothing. At night he wore a Texas catheter, a device in which a condom catheter is placed on the penis which is, in turn, connected to a bag to collect any urinary drainage. In addition, he had some problems for several years in the 1980’s with bowel incontinence from a hernia surgery. At the time of trial, his bowel problems were resolved.
Following this accident, according to Dr. Jelsma, plaintiff suffered a contusion to the conus of the spinal cord. This resulted in a different kind of damage to the nerves that are responsible for bladder control. As a result, he had flaccid neurogenic bladder dysfunction in which the bladder does not empty on its own, but will fill up. When the bladder fills, plaintiff cannot void and the overflow continually leaks out. Further, the injury prevents plaintiff from voiding by pressing on the nerve at the rectum. Medications were unsuccessful in treating the condition. As a result, plaintiff now has to insert a catheter into his penis four times a day to urinate.
InThe procedure can be performed anywhere. However, it can be painful and has caused infections, an incident of stricture of the urethra and severe bleeding. The procedure by its nature increases plaintiff’s risk of infections, although plaintiff had both prostrate and urinary infections prior to the accident. Because of the infections, plaintiff is kept on antibiotics. Like infections, the risk of strictures is also increased with the continued use of the catheter because scar tissue builds up. The one time that a stricture formed, Dr. Angel had to release it before the catheter-ization procedure could be resumed. He was able to do this in the office by dilation and surgical intervention was not necessary. Further, severe bleeding occurs when plaintiff has problems extracting the catheter due to infection or some other cause. The more experience plaintiff has with the procedure, the less problem he has suffered from bleeding. Plaintiff continues to be monitored by the urologist at least every two months and .more frequently if he develops an infection or other problem.
Plaintiff testified that when he drove his long haul truck, he was forced to use public bathrooms in truck stops, not the most sanitary environment. Because of that, he used a new catheter each time he voided. Further, its use causes him embarrassment, humiliation and frustration, particularly when he bleeds. His wife testified that she went with him on some of his trips and that he bled profusely at one stop. He was so frustrated and embarrassed that he cried.
The catheterization is an invasive procedure, which has caused plaintiff much pain, bleeding, infections, and one episode of stricture. It has increased his risks of infection and stricture. He may have further episodes of bleeding. The procedure is inconvenient and plaintiff has suffered and will continue to suffer embarrassment. He condition is much worse than before the accident. Thus, we hafind that the trial judge did not err in his award of general damages.
Accordingly, we hereby amend the trial court Judgment Notwithstanding the Ver- *457 diet to hold plaintiff to be 70% at fault in the accident and defendants, Stevens and Sumrall, to be 10% at fault. We otherwise affirm the Judgment Notwithstanding the Verdict.
AMENDED AND AFFIRMED AS AMENDED.