315 So.2d 93 (1975)
Ludy YOUNG, Plaintiff and Appellee,
v.
SENTRY INSURANCE COMPANY, Defendant and Appellant.
No. 5022.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1975.
Rehearing Denied July 24, 1975.
Voorhies & Labbe by W. Gerald Gaudet, Lafayette, for defendant-appellant.
Young & Burson by J. Nilas Young, Eunice, for plaintiff-appellee.
*94 Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is an action in tort for personal injuries and property damage sustained by the plaintiff-Ludy Young, as the result of a collision between the plaintiff's 1971 Ford automobile and a horse belonging to one Hilman J. Smith. The accident occurred on U.S. Highway 190, about two miles east of Eunice, Louisiana, in St. Landry Parish, at approximately 9:30 o'clock P.M. on January 16, 1973. The defendant-Sentry Insurance Company (liability insurer for Hilman J. Smith) answered plaintiff's suit and reconvened for the loss of the animal, alleging the sole cause of the accident to be the plaintiff's negligence. From a judgment in favor of the plaintiff, against the defendant-insurer in the sum of $2,191.72, the defendant has appealed.
The record reflects that on the aforementioned night the plaintiff was driving his automobile in an easterly direction, at approximately 50 miles per hour, when two horses suddenly bolted onto the four-laned highway, one of which ran into the path of plaintiff's vehicle causing the collision herein. The plaintiff's automobile struck and killed the horse, thereafter careening through a ditch into a nearby field, causing both personal injuries to the plaintiff and extensive damage to his vehicle.
Subsequent to the accident it was learned that the horse was owned by Hilman J. Smith and quartered at stables owned by Joe Nagata, near the scene of the accident. The stable area was a barn located a short distance down a gravel road which ran perpendicular to and connected with Highway 190. Within the barn was located a number of stalls where horses were kept, each with a gate. Immediately outside the barn was a wooden corral area with a gate leading to a large pasture (immediately adjacent to Highway 190) and a main wooden gate which led to the gravel road. The stall in which the horse in question had been located prior to the accident had a wooden "slide latch" used to secure the gate thereto. The main gate also had a wooden slide latch and additionally a rope which was connected to the corral fence immediately adjacent to the gate and looped over the top of the gate when in a closed position. Further, the record indicates that on the day preceding the night of the accident, a large chain was also looped around the corral gate post, over the top of the gate, and connected with a small clasp.
The caretaker for the horses, Henry Broussard, testified at trial that the afternoon before the accident he had adequately latched the stall containing Smith's horse, in addition to securing the barn door and the main gate leading to the gravel road. He further stated that following the accident he returned to the stable area and found both the main gate and stable door open. Additionally, he indicated that the chain which had been looped over the main gate was lying next to the gate with the clasp broken. Broussard opined that the chain had been broken and the gates opened by someone other than the horse. He further testified that the Smith horse, in addition to several others, had escaped from the stable area on at least one or two prior occasions, including the night before the accident. He surmised it was either the result of vandals or that the horses simply "got out".
The defendant contended at trial and now on appeal that Hilman Smith was without fault in regard to the escaping animal and that adequate safeguards were taken to prevent his horse from escaping. Specifically, defendant points to the abovementioned testimony of Henry Broussard to the effect that he had secured all of the respective doors and gates the night of the *95 accident. It is also alleged that vandals or mischievous children were responsible for the horses escaping.
The trial judge concluded, however, that defendant failed to establish lack of fault on the part of the horse's owner and did not show by a preponderance of the evidence that vandalism in fact was the the cause of the horse escaping. We cannot say he erred in these findings.
LSA R.S. 3:2803 prohibits the owner of livestock from "knowingly, willfully, or negligently" permitting his livestock to roam at large on certain highways of this state. U.S. Highway 190 is one of the roads enumerated in the statute.
The jurisprudence interpreting said statute is well settled that when an automobile strikes a horse or cow on one of the aforementioned "stock law" highways, the burden of proof rests upon the owner of the animal to exculpate himself from "even the slightest degree of negligence". Schexnider v. Allstate Ins. Co., 304 So.2d 825 (La.App. 3rd Cir. 1974); writ refused, "no error of law", Feb. 14, 1975, 307 So.2d 639 (La.1975). Womack v. Rhymes, 300 So.2d 226 (La.App. 2nd Cir. 1974), writ refused, "no error of law," Nov. 22, 1974, 303 So.2d 179 (La.1974).
Thus, a legal presumption of fault or negligence on the part of the animal's owner is created in such cases. In order to rebut same the defendant must not only show that he has taken all reasonable and prudent measures and precautions to enclose his livestock, but must also explain the presence of the animal on the highway by showing when, where, and how the animal escaped from its enclosure, that is, his complete freedom from fault. Womack v. Rhymes, supra; concurring opinion in Ross v. Del Valle, 277 So.2d 163 (La.App. 3rd Cir. 1973) and cases cited therein.
In the present case the defendant has failed to establish the horse owner's freedom from negligence. The main gate leading from the corral to the gravel road was found open following the accident.
As pointed out in Gabbard v. Areno, 302 So.2d 45 (La.App. 3rd Cir. 1974):
" . . . Although defendant had a good fence and good gates, he cannot avoid the implication of negligence when a gate is found open and his animals are roaming the highway. This is the situation contemplated in placing the burden on the keeper of animals to absolve himself from negligence. The gate, fence, and enclosure are within the care, custody, and control of the person responsible for livestock."
Foremost in our minds, however, is the fact that this horse, in the accompany of others, had escaped on previous occasions, including the night prior to the collision herein. This fact was well known to its owner, Hilman Smith. See Liner v. McEnery, 176 So.2d 786 (La.App. 2nd Cir. 1965). Further, if there was suspicion of vandalism, the record, however, being devoid of any evidence showing same, there existed an additional greater duty upon the animal's owner correspondent to the risk involved.
Also mentioned by counsel for both the plaintiff and defendant is the recent Supreme Court decision of Holland v. Buckley, 305 So.2d 113 (1974)decided on October 28, 1974, wherein the High Court placed responsibility, in the nature of strict liability under LSA C.C. Art. 2321, on the owner of an animal in a dog bite case. We feel, however, that it is not necessary for us to make a comment thereon, insofar as its applicability herein, in light of the fact that this action was brought and argued under traditional negligence theory. Justice Tate, as organ of the court in Holland, clearly indicated that application of *96 strict liability was "an exception to or in addition to any ground of recovery on the basis of negligence, Art. 2316"305 So.2d at 119. The correctness of this conclusion is also supported by the fact that the Supreme Court denied writs, "no error of law", in both of the previous mentioned cases, Womack v. Rhymes, and Schexnider v. Allstate Ins. Co., supra after deciding the Holland case) both of which relied solely on the negligence of the animal owner. We have likewise determined herein that the owner of the horse in question was liable under negligence theory.
For the above and foregoing reasons the judgment of the trial court is affirmed at defendant-appellant's costs.
Affirmed.