630 So.2d 963 (1994)
Nere OURSO and Vickie Ourso, Plaintiffs-Appellees,
v.
John S. GRIMM, Defendant-Appellant, and
The Lasalle Parish Police Jury, Defendant.
No. 92-1274.
Court of Appeal of Louisiana, Third Circuit.
January 5, 1994.
*964 John C. Pickels, Robert Frederick Mulhearn Jr., Alexandria, for John S. Grimm.
Joseph Wilson, Jena, for Nere H. & Vickie Ourso.
J. Reed Walters, Dist. Atty., for State.
Howard Battle Gist, III, Alexandria, for Classic Syndicate, Inc.
Paul M. Lafleur, Alexandria, for State Farm Mut. Auto. Ins.
Before DOMENGEAUX, C.J., and YELVERTON, KNOLL, SAUNDERS and WOODARD, JJ.
DOMENGEAUX, Chief Judge.
This is a suit for injuries sustained when a vehicle driven by Vickie Ourso struck one or more cows owned by John Grimm on La. Highway 8 between Bentley and Trout. The cows were on the highway in violation of Louisiana's "stock law," La.R.S. 3:2803.
After being sued by Mrs. Ourso and her husband, Nere, Grimm filed a third party demand against the LaSalle Parish Police Jury. Grimm contended that his cows gained access to the highway through a cattle guard that the police jury failed to maintain. The Oursos then amended their petition to name the police jury as a defendant. In a separate suit, State Farm Mutual Automobile Insurance Company filed a claim for the amount it paid to the Oursos as property damage for their vehicle. The two suits were consolidated at trial, but we will render a separate decree on appeal. See State Farm Mutual Automobile Ins. Co. v. Grimm, 630 *965 So.2d 970 (La.App. 3d Cir.1993), rendered this same day.
Pursuant to La.R.S. 13:5105, a jury tried the Oursos' claim against Grimm, and a judge tried all claims against the police jury. The jury fixed Mrs. Ourso's total damages at $25,300, but it found no fault on the part of Grimm. In written interrogatories, the jury responded that it would have assessed 100% fault to the police jury. The trial judge disagreed with the jury verdict on the question of liability and entered a judgment notwithstanding the verdict, finding Grimm 75% at fault. The trial judge did not disturb the jury's award of damages. The trial court then entered its own judgment finding the police jury free from fault. As a result of the two rulings, 25% fault is unassigned. Grimm appeals, arguing, first, that he should not have been assessed any fault and second, that the damages awarded are excessive.

FACTS
The accident happened in the late evening of September 21, 1987. Vickie Ourso testified that she was driving about 50 miles per hour when she suddenly saw the eyes of several cows in the dark as she came around a curve. She struck some of the cows, killing one. She was able to restart her vehicle and drive away, but the vehicle became disabled about a fourth of a mile from her home. After Mrs. Ourso walked the remaining distance to her house, she and her husband notified the authorities and returned to the scene of the accident in another family car. There, they met Deputy Sam Young of the LaSalle Parish Sheriff's Office and John Grimm, the owner of the cattle on the highway.
Deputy Young testified that when he arrived the cows were no longer on the road. They had already gone through a fence that was down near the accident site. Mrs. Ourso testified that she could not remember if the cows were on the road when she returned or if they had walked to the side of the road. However, Mr. Grimm testified that when he arrived the cows were between the highway and the fence; he did not see any portion of the fence down. His cows then began walking toward the cattle guard at the intersection of Highway 8 and Mount Sinai Road, which was about a half of a mile from the accident site. Grimm followed the cattle in his truck and observed them enter the pasture over the cattle guard, which was filled with dirt and debris. He testified that he spent the night in his truck at the cattle guard to keep the animals from getting out again.
It is undisputed that the police jury did not clean out the cattle guard for about one year before the accident. Photographs taken the morning after the accident show that the cattle guard was in such a condition that the cows could have crossed over it: some areas were completely filled in with dirt, and grass was growing through the bars. John Grimm testified that he notified Homer Paul of the police jury of this condition about one week before Mrs. Ourso's accident; Mr. Paul testified that he was unsure about the exact date of his conversation with Grimm, but he believed it was a few days before the accident.
In written reasons, the trial judge found that the police jury breached its duty to maintain the cattle guard but that this breach was not a cause in fact of the plaintiffs' injuries because there was no proof that the cows entered the highway through the cattle guard. Accordingly, the trial court entered its judgment finding the police jury free from fault and entered a JNOV assessing John Grimm with 75% fault.

STANDARD OF REVIEW
In a bifurcated trial where the jury and the trial judge reach conflicting findings as to the liability of public and private defendants, a JNOV is a proper means of reconciling the two verdicts. See Dean v. Terrebonne Parish Police Jury, 510 So.2d 82 (La.App. 1st Cir.1987), citing Champagne v. American Southern Ins. Co., 295 So.2d 437 (La.1974). In such cases, this circuit has adopted the position that there is no conflict between the findings of the jury and the trial judge because, as a matter of law, the jury has no right or duty to adjudicate the fault of the *966 public defendant.[1]Lasswell v. Matlack, Inc., 527 So.2d 1199 (La.App. 3d Cir.1988), writs denied, 532 So.2d 104, 153 (La.1988); Rogers v. Calcasieu Parish Police Jury, 487 So.2d 190 (La.App. 3d Cir.1986), writ denied, 489 So.2d 924 (La.1986). On appeal, therefore, the manifest error rule is applied to review the factual findings of the trial judge. See Dean, supra.

LIABILITY
John Grimm owned 10 head of cattle which he kept on the open range. He did not own the land on which the cows grazed, nor was he responsible for the upkeep of the cattle guard on Mount Sinai Road or the fences along Highway 8. However, his cows wandered onto a section of highway that is covered by La.R.S. 3:2803. That statute provides:
No person owning livestock shall knowingly, willfully, or negligently permit his livestock to go at large upon the following public highways of this state:
34. LA 8 ... Bentley to Trout.
In Young v. Sentry Ins. Co., 315 So.2d 93 (La.App. 3d Cir.1975), writ denied, 319 So.2d 419 (La.1975), this court stated:
The jurisprudence interpreting said statute is well settled that when an automobile strikes a horse or cow on one of the aforementioned "stock law" highways, the burden of proof rests upon the owner of the animal to exculpate himself from "even the slightest degree of negligence". Schexnider v. Allstate Ins. Co., 304 So.2d 825 (La.App. 3d Cir.1974); writ refused, "no error of law", February 14, 1975, 307 So.2d 639 (La.1975). Womack v. Rhymes, 300 So.2d 226 (La.App. 2d Cir.1974), writ refused, "no error of law," November 22, 1974, 303 So.2d 179 (La.1974).
Thus, a legal presumption of fault or negligence on the part of the animal's owner is created in such cases. In order to rebut same the defendant must not only show that he has taken all reasonable and prudent measures and precautions to enclose his livestock, but must also explain the presence of the animal on the highway by showing when, where, and how the animal escaped from its enclosure, that is, his complete freedom from fault. Womack v. Rhymes, supra; concurring opinion in Ross v. Del Valle, 277 So.2d 163 (La.App. 3d Cir.1973) and cases cited therein.
315 So.2d at 95.
To rebut this presumption of negligence, Grimm sought to prove that his cows entered the highway at the cattle guard on Mount Sinai Road, which was a half of a mile from the accident. However, the trial court was evidently impressed with the testimony of Deputy Young that the fence along Highway 8 was down at the accident site. We are unable to determine from the record who owned or maintained this fence.
In a "stock law" case, the burden is on the owner of the livestock to prove his freedom from fault. The trial judge found that Grimm failed to meet this burden because he did not make a prima facie showing of the police jury's liability, i.e., Grimm did not prove that any negligence the police jury may have committed was a cause in fact of Mrs. Ourso's injuries. The testimony of Deputy Young supports the conclusion of the trial judge, and on appeal, we cannot say the trial judge erred in absolving the police jury of any responsibility. Nor can we say the trial court erred in imposing liability on Grimm, in the absence of any evidence as to who was responsible for the upkeep of the fence.
However, we do find the trial judge erred in apportioning only 75% fault in the JNOV. Our comparative fault system is complimentary in that percentages of fault must always equal 100%. See Turner v. Safeco Ins. Co. of America, 472 So.2d 43 (La.App. 1st Cir.1985), at footnote 3. Accordingly, we will amend the trial court judgment to reflect 100% fault assessed to John Grimm, the owner of the livestock.

*967 QUANTUM

Grimm also argues that the amount awarded in damages is excessive. The jury verdict, which was adopted by the trial judge, was itemized as follows:

 Medical expenses $ 5,000.00
 Pain and suffering 10,000.00
 Mental anguish, emotional distress 10,000.00
 Loss of income 300.00
 __________
 $25,300.00

Mrs. Ourso testified that she became ill at the scene of the accident and was taken by her husband to a hospital emergency room where she was treated and released that evening. The next day, she was seen by Dr. Sanit Sirikul, a general practitioner (who is also her employer), complaining of tenderness in the lower back, abdomen, and legs. Dr. Sirikul did not detect any points of tenderness or spasm, but he did note a restricted range of motion in the plaintiff's left leg. Mrs. Ourso was seen again by Dr. Sirikul on October 15, 1987, still complaining of pain in the back, abdomen and leg, and also experiencing nausea and vomiting. Dr. Sirikul diagnosed a duodenal ulcer, which he attributed in part to stress and also to the medication Mrs. Ourso was taking for her injuries in the accident. He testified that he believed Mrs. Ourso should recover in three months from the injuries to her spine, but that he would not be surprised if she continued to have pain and stiffness with physical exertion up to one year after the accident.
On October 2, 1987, Mrs. Ourso was seen by Dr. Linus Carrol. She reported a history of two auto accidents, the first on September 21, 1987 when she ran into some cows and another one two days later on September 23, 1987 when a car backed into the side of her vehicle. He noted a contusion on her left shoulder and did not render any further treatment.
Mrs. Ourso was also seen by Dr. Charles Clauss, a chiropractor, beginning on October 6, 1987. She reported a history of being thrown into the steering wheel of her automobile after hitting a cow and was complaining of pain in her neck, lower back, chest and legs. Dr. Clauss observed that she was sore to touch on both sides of her lower back. Thereafter he treated her regularly through December of 1987 with spinal manipulation and muscle stimulation. He did not see her again until October of 1988, when he resumed his treatment through January of 1989.
Dr. John Passman, an orthopedic surgeon, examined Mrs. Ourso on August 6, 1990. Three years post accident, he noted the paraspinous muscles in her neck and back were extremely tense and tight. He was of the opinion that physical therapy would help Mrs. Ourso recover and that any therapy which she may have had in the past was grossly inadequate.
Mrs. Ourso was also seen by Dr. Jerry N. Smith, a physical medicine and rehabilitation specialist, on July 8, 1991. He diagnosed her problem as classic myofascial pain syndrome. He believed the pain she described was consistent with a shortening of the muscles affected, a condition that had not been specifically treated in the past. He prescribed Elavil, an anti-depressant, and recommended physical therapy, or a period of strengthening over several months.
Mrs. Ourso testified that she was unable to undergo the recommended physical therapy treatments because she could not afford them and her health insurance would not cover the claim. She reported that she still experienced constant aching and burning, throbbing pain five years after the accident. She admitted that a few days after her accident with the cow, she was involved in another accident in which another driver backed into the side of her car. She testified that the injuries from this second accident persisted for only a few days.
After reviewing the medical testimony, we find no grounds to disturb the trial court verdict. The jury was informed of Mrs. Ourso's second accident, yet apparently found it to be only minor in comparison to the accident with the cow. No one testified that Mrs. Ourso was malingering; in fact, almost all of the doctors agreed that her complaints were consistent with their findings. Although the plaintiff did not have the recommended physical therapy treatments, she did follow through with chiropractic care, which she could afford. The trier of fact accepted Mrs. Ourso's testimony as credible, and we *968 are not in a position to second guess that finding. Although the amount awarded for general damages is generous, it is not out of line with other awards for chronic muscular conditions which persist over time. See for example, Hodapp v. American Indemnity Co., 618 So.2d 32 (La.App. 3d Cir.1993) where we affirmed an award of $18,500 in general damages for a chronic condition spanning a 22 month period of treatment.
For the above reasons, the judgment of the trial court in favor of Vickie Ourso and against John Grimm is affirmed but amended to increase the fault of John Grimm to 100%. The judgment in favor of State Farm Mutual Automobile Insurance Co. for $1,977.43 against John Grimm is also affirmed. Costs of this appeal are assessed to defendant, John Grimm.
AFFIRMED AS AMENDED.
KNOLL, J., concurs and assigns reasons.
WOODWARD, J., concurs for reasons assigned by KNOLL, J.
SAUNDERS, J., dissents and assigns reasons.
KNOLL, Judge, concurring.
I agree with the ultimate disposition of this case. The trial court's discussion of the jurisprudence dealing with conflicting judge/ jury verdicts is not relevant to the original trial, nor this appeal. The rendering of the JNOV makes it unnecessary to entangle ourselves in this complicated area of the law.
In all of the cases dealing with conflicting verdicts cited by the majority, there was a verdict by the trial judge and a verdict by the jury. This is not so in the case sub judice. The trial judge eliminated the conflicting jury verdict by the exercise of his JNOV power. Therefore the appellate court is not faced with conflicting verdicts. The standard of review is that which is appropriate for review of JNOV, i.e., manifest error. Neal v. Highlands Ins. Co., 610 So.2d 177 (La.App. 3rd Cir.1992), writ denied, 612 So.2d 100 (La.1993).
In the case sub judice, the jury found Grimm to be 0% at fault and the Police Jury 100% at fault. However, as to the Police Jury, this determination is irrelevant since a jury may not try a case against a political subdivision, LSA-R.S. 13:5105. The trial judge found, as was in his purview, that the plaintiffs had not sufficiently established a causal connection between any duty breached by the Police Jury and their injuries. Also the trial judge apparently agreed with the jury's finding of no fault on the plaintiffs' part. Finally, and this is the pivotal step in the case, the trial court entered a JNOV finding Grimm 75% at fault. It is unclear what became of the remaining 25% of fault.
As I understand the trial judge's written reasons, it is because of the unusually high duty of the livestock owner that Grimm was found liable. Under a normal negligence standard, reasonable minds might be able to find Grimm blameless even with his knowledge that the cattle gap was ineffective. However, because of the higher duty, the trial judge was able to find no reasonable juror could believe that Grimm was free from fault. The trial judge pointed out the only way the jury could hold the Police Jury liable, was for it to find the cattle had entered the street via the cattle gap, as opposed to via the fallen fence. Since Grimm knew of the defective cattle gap and did nothing to prevent his cattle from escaping through the gap, the trial judge must have believed Grimm's enhanced duty was violated with enough certainty to render a JNOV. In light of the livestock owner's heightened duty of care, I do not believe the trial court was manifestly erroneous in finding Grimm at fault. As to all other matters, I am in agreement with the majority.
For these reasons, I respectfully concur.
SAUNDERS, Judge, dissenting,
The general rule in a bifurcated trial where the jury and the trial judge reach inconsistent findings and there is an appeal is that the court of appeal should resolve these differences and render a single harmonized decision based upon the record as a whole. As this court stated in White v. Frenkel, 615 So.2d 535, 546, ftn. 5 (La.App. 3d Cir.1993), "in such a situation, the manifest error rule is inapplicable, and the court of appeal must *969 decide which decision is more reasonable after a careful examination of the record." See also Morales v. Tetra Technologies, 608 So.2d 282, 284 (La.App. 3d Cir.1992), writ denied 610 So.2d 818 (La.1993).
The majority proposes to apply a different standard of review to bifurcated cases in which one of the defendants is a public body, reasoning that:
"In such cases, this circuit has adopted the position that there is no conflict between the findings of the jury and the trial judge because, as a matter of law, the jury has no right or duty to adjudicate the fault of the public defendant. On appeal, therefore, the manifest error rule is applied to review the factual findings of the trial judge."
(Citations and footnote omitted.)
Under the majority's analysis, we would apply the manifest error rule to the trial judge's decision on the JNOV and affirm, unless clearly wrong. Under the White rule, we would look at the record as a whole and decide whether the decision of the trial judge or jury was the more reasonable decision after careful examination of the entire record.
It is true that Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3d Cir.1984), writ denied, 465 So.2d 737 (La.1985), holds that the jury verdict carries no weight as to the liability of the police jury. This view, however, as applied to the present case, also gives the jury verdict no weight as to the liability of Grimm, a determination properly within the province of the jury. To preserve the integrity of the jury verdict, and also the plaintiffs' right to a jury trial as to a private defendant, I feel that the jury's determination of Grimm's liability should not be disregarded under a guise that there is no longer any "conflict." Such reasoning effectively negates plaintiffs' right to a jury trial.
The majority cites Rogers v. Calcasieu Parish Police Jury, 487 So.2d 190 (La.App. 3d Cir.), writ denied, 489 So.2d 924 (La.1986), as authority for applying the manifest error rule to the trial judge's judgment on the JNOV. However, this court, in actuality, reviewed the entire record and after such review, found that the trial court reached the more reasonable decision of the two.
The Rogers court observed that:
"Where incompatible results are reached by judge and jury in a bifurcated trial:
"this Court must resolve the differences and render a single decision based on the record as a whole. Thornton v. Moran, 348 So.2d 79 (La.App. 1 Cir. 1977); Bunkie Bank and Trust v. Avoyelles Parish Police Jury, 347 So.2d 1305 (La.App. 1 Cir.1977). In such a situation the manifest error rule is inapplicable and the Court of Appeals must decide which decision is more reasonable after a careful examination of the entire record. Aubert v. Charity Hospital of Louisiana, 363 So.2d 1223 (La.App. 4 Cir.1978)."

Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3rd Cir.1978), writ refused 366 So.2d 564 (La.1979)."
Rogers, supra, 487 So.2d at 191-92.
Under the facts of the case before us, I feel that the decision reached by the jury, i.e., that the police jury was at fault and that Grimm was not at fault, is the more reasonable decision to be reached if we view the evidence as a whole and render a single harmonized decision based upon the record as a whole. However, there is evidence to support the trial court's findings that the police jury was not at fault and that Mr. Grimm was at fault. Accordingly, if we apply the manifest error rule, we must sustain the trial court.
I would apply the general rule, which I feel to be the better rule, i.e., that the court of appeal should consider the record as a whole and render a single harmonized decision, as opposed to simply applying the manifest error rule to the findings of the trial court without giving any weight to the findings of the jury.
For these reasons, I respectfully dissent.
NOTES
[1] This reasoning has been criticized by the Fourth Circuit, which recommends that the appellate court make an independent evaluation of the record if the factual findings of the trial judge and the jury are inconsistent. McCullough v. Regional Transport Authority, 593 So.2d 731 (La. App. 4th Cir.1992), writ denied, 595 So.2d 655 (La.1992).