838 So.2d 67 (2003)
Mark BULLER
v.
AMERICAN NATIONAL PROPERTY & CASUALTY COMPANIES, et al.
No. 02-820.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
*68 Reba S. Powers, Attorney at Law, Oakdale, LA, for Plaintiff in Cross-Claim/Appellant, Derrick Marcantel.
Michael B. Holmes, Hebert, Holmes & Bertrand, Kinder, LA, for Defendant/Appellee/Appellant, John Mayes.
Court composed of ULYSSES GENE THIBODEAUX, MICHAEL G. SULLIVAN, and BILLY H. EZELL, Judges.
MICHAEL SULLIVAN, Judge.
At about noon on January 23, 2000, Derrick Marcantel and his passenger, Mark Buller, were traveling east on Parish Line Road in Allen Parish, Louisiana, when Mr. Marcantel's pickup truck struck an adult white cow that had wandered onto the road. That portion of Parish Line Road was included in a local "stock law" ordinance, enacted pursuant to La.R.S. 3:3003, that prohibited owners of livestock from "knowingly, willfully or negligently" allowing their livestock to roam at large on certain public highways.
Mr. Buller filed suit against Mr. Marcantel and his insurer, as well as John Mayes, the alleged owner of the cow. Mr. Marcantel then filed a cross-claim against Mr. Mayes. After Mr. Buller settled the main demand, the remaining parties proceeded to a bench trial of Mr. Marcantel's cross-claim. At the close of evidence, the trial court apportioned 75% fault to Mr. Marcantel and 25% fault to Mr. Mayes. The trial court awarded Mr. Marcantel $1,000.00 in general damages and $631.53 in medical expenses, subject to a reduction for his percentage of fault, but it denied his claim for property damages. Mr. Marcantel filed an appeal, to which Mr. Mayes filed an answer. For the following reasons, we affirm the judgment in favor of Mr. Marcantel, but we amend it to include an award of property damages.

Discussion of the Record
Mr. Marcantel testified that he was traveling at about 35 m.p.h. in clear weather conditions on Parish Line Road, which is a straight, brown gravel road, when his passenger asked him to check the fast forward button on his tape player. He looked down at the tape player, and when he looked up he saw a white cow standing in the road. He testified that he "jerked" his wheel to avoid hitting the cow, but that he still hit the rear of the animal. After the accident, he noticed that about four other cows were also on the road. (The white cow survived the accident and was able to walk away.) According to Mr. Marcantel, Mr. Mayes admitted at the scene that he owned the cows and that he would take care of any medical bills. The day after the accident, Mr. Marcantel obtained an estimate that repairs to his truck would total $2,182.19. However, he testified at trial that he could not afford to repair the truck, so he gave it to his grandfather, who was a mechanic.
*69 Mr. Mayes testified that his family owns 550 acres to the north of the accident site where he keeps about 110 cows. The field to the south of the accident site is owned by the Manuel family, but they do not keep cattle on that land. Mr. Mayes testified that, at the scene of the accident, he presumed the cows on the road were his; therefore, with the help of a sheriff's deputy, he returned them into his field. After the accident, however, he discovered that the white cow, a Charolais breed, did not have an ear tag or a brand. In his herd, Mr. Mayes kept three to five Charolais, all of which he believed were marked. Hence, he denied that the white cow belonged to him, although he admitted that the other cows found on the road were his. He testified that he contacted Hine Unkel, who operated the only other cattle business in the area, but Mr. Unkel stated that the white cow was not his. Because no one else claimed the injured Charolais, Mr. Mayes kept it with his cattle, and it later had a calf.
Mr. Mayes testified that his cattle were enclosed by a four-strand barbed wire fence that was only one-and-half years old. He further testified that the fences were inspected either daily or every other day, particularly in the winter months when the cows had to be fed often, and that he did not observe any deficiencies in his fence after this accident. However, he also testified that he and the sheriff's deputy attempted to guide the escaped cows through a gate after the accident, but that the cattle turned before they reached the gate and "jumped into the fence and went through it." In his deposition, Mr. Mayes stated that the sheriff's department had contacted him two or three times in the previous six months about cattle escaping from his property. Mr. Mayes also recalled another accident in which Mr. Buller's mother struck one of his cows.

Ownership or Control of the Cow
In his answer to the appeal, Mr. Mayes first argues that the trial court erred in finding that he owned or controlled the white cow involved in the accident, given that the animal had no identifying brand or ear tag and that it was seen coming out of the pasture owned by the Manuels to the south of Parish Line Road.
A court of appeal may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Stobart v. State, through the Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). Thus, "[i]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990) (citing Rosell v. ESCO, 549 So.2d 840 (La.1989)).
In State Farm Mutual Automobile Insurance Co. v. Thompson, 433 So.2d 376, 377 (La.App. 3 Cir.), writ denied, 441 So.2d 212 (La.1983), this court recognized that "[t]he ownership of cattle involved in an accident may be proved by circumstantial evidence." In Thompson, we found that the evidence excluded every reasonable hypothesis but that the defendant owned the cattle involved in an accident, where the two animals that were killed were in the company of five to seven other cows, one of which the defendant admitted was his, and where the defendant removed the dead cattle from the roadway.
In the present case, Mr. Mayes denied ownership of the Charolais involved in the accident because it did not have an ear tag or a brand and because it was seen coming from the south field, which was not his. However, that animal was found wandering with other cows that undisputedly *70 belonged to Mr. Mayes, and the south field was not used for cattle operations. Mr. Mayes explained that he kept only three to five Charolais, all of which he believed had either a brand or an ear tag. However, he admitted that his cows did lose their ear tags from time to time. The only other explanation for the white cow's presence with Mr. Mayes' cows was that it belonged to Mr. Unkel, who raised cattle nearby; however, Mr. Mayes admitted that Mr. Unkel denied ownership of the cow. Additionally, Mr. Mayes testified that, on occasion, Mr. Unkel's cows would mingle with his, and that one of Mr. Unkel's cows was currently in his pasture. Finally, Mr. Mayes testified that he still has possession of the white cow because no one else has claimed it. After reviewing the entirety of the record, we find no error in the trial court's finding that Mr. Mayes either owned the Charolais or exercised control over it for some time before the accident.

Apportionment of Fault
In apportioning 75% fault to Mr. Marcantel, the trial court considered Mr. Marcantel's admission that he looked down to check the tape player immediately before he struck the cow. After viewing a picture of Parish Line Road near the accident site and considering that the accident occurred in daylight on a straight road without any obstructions, the trial court found no reason why Mr. Marcantel should not have seen the white cow sooner than he did. In assessing the remaining 25% fault to Mr. Mayes, the trial court found that Mr. Mayes failed to exculpate himself from the presumption of negligence applied in "stock law" cases by explaining how the cow escaped from its enclosure. Both Mr. Mayes and Mr. Marcantel have appealed these findings.

Negligence of Mr. Mayes
Mr. Mayes argues that the trial court applied an improper burden of proof by requiring him to prove his freedom from fault. He contends that the 1996 amendment to La.Civ.Code art. 2321, overruling the strict liability interpretation given that article in Holland v. Buckley, 305 So.2d 113 (La.1974), has also eliminated the presumption of negligence that the courts have applied in "stock law" cases.
In his oral reasons, the trial court alluded to the burden of proof articulated in Young v. Sentry Insurance Co., 315 So.2d 93 (La.App. 3 Cir.), writ denied, 319 So.2d 419 (La.1975) and Ourso v. Grimm, 92-1274 (La.App. 3 Cir. 1/5/94); 630 So.2d 963, writs denied, 94-339 (La.3/25/94); 635 So.2d 231, and 94-346 (La.3/25/94); 635 So.2d 230. In Young, 315 So.2d at 95, we stated the following in interpreting La.R.S. 3:2803, the "stock law" statute applicable to state highways:[1]
The jurisprudence interpreting said statute is well settled that when an automobile strikes a horse or cow on one of the aforementioned "stock law" highways, the burden of proof rests upon the owner of the animal to exculpate himself from "even the slightest degree of negligence". Schexnider v. Allstate Ins. Co., 304 So.2d 825 (La.App. 3rd Cir.1974); writ refused, "no error of law", Feb. 14, 1975, 307 So.2d 639 (La.1975). Womack v. Rhymes, 300 So.2d 226 (La.App. 2nd Cir.1974), writ refused, "no error of law," Nov. 22, 1974, 303 So.2d 179 (La. 1974).
Thus, a legal presumption of fault or negligence on the part of the animal's *71 owner is created in such cases. In order to rebut same the defendant must not only show that he has taken all reasonable and prudent measures and precautions to enclose his livestock, but must also explain the presence of the animal on the highway by showing when, where, and how the animal escaped from its enclosure, that is, his complete freedom from fault. Womack v. Rhymes, supra; concurring opinion in Ross v. Del Valle, 277 So.2d 163 (La.App. 3rd Cir. 1973) and cases cited therein.
Louisiana courts had consistently applied a presumption of negligence against the owner of livestock in "stock law" cases well before the Holland decision. In Parker v. Young, 122 So.2d 699, 703 (La.App. 1 Cir.1960), also construing La.R.S. 3:2803, the court reasoned:
It would completely vitiate a stock law if the burden of proof of defendant's negligence were placed upon the passing motorist who strikes a cow on an open highway. The proof of where, when, and how the cow escaped from the enclosure is logically and fairly placed upon the individual who has a duty to keep that cow within a proper enclosure.
Further, writing for the court in Young, 315 So.2d at 95-96, Judge Domengeaux clearly stated that the reasoning and outcome of that case was not based upon the strict liability interpretation of Article 2321 in Holland:
We feel, however, that it is not necessary for us to make a comment [on Holland], insofar as its applicability herein, in light of the fact that this action was brought and argued under traditional negligence theory. Justice Tate, as organ of the court in Holland, clearly indicated that application of strict liability was "an exception to or in addition to any ground of recovery on the basis of negligence, Art. 2316"305 So.2d at 119. The correctness of this conclusion is also supported by the fact that the Supreme Court denied writs, "no error of law", in both of the previous mentioned cases, Womack v. Rhymes, and Schexnider v. Allstate Ins. Co., supra (after deciding the Holland case) both of which relied solely on the negligence of the animal owner. We have likewise determined herein that the owner of the horse in question was liable under negligence theory.
Thus, it seems clear that the presumption that Mr. Mayes challenges is not solely based upon Article 2321, but also originates with the "stock law" found in La.R.S. 3:2803 and 3:3003. As Justice Summers pointed out in his dissent from the denial of writs in Young at 319 So.2d 419:
Taken together, these enactments [Article 2321 and La.R.S. 3:2803] require as a prerequisite to liability of the animal owner that he shall "knowingly, willfully or negligently" permit his livestock to go at large. This requirement is a far cry from the rule the Court of Appeal applies imposing the burden of proof upon the owner of the animal to exculpate himself from "even the slightest degree of negligence" instead of requiring, as in all other tort and civil cases, that the plaintiff establish by a preponderance of evidence that the animal owner has "knowingly, willfully or negligently" permitted his livestock to go at large.
Nonetheless, this is the interpretation that our courts of appeal have consistently applied in "stock law" cases. Accordingly, we find the trial court did not err in referring to Young, 315 So.2d 93, and its progeny in its oral reasons. Additionally, we find that the trial court's conclusion that Mr. Mayes was negligent is supported by the present language of Article 2321. Article 2321 (emphasis added) now provides:

*72 The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

In Granger v. Guillory, 01-1539, 02-83 (La.App. 3 Cir. 6/5/02); 819 So.2d 477, writs denied, 02-1841, 02-1862 (La.10/4/02); 826 So.2d 1132, this court relied on the last sentence of Article 2321 to find that the doctrine of res ipsa loquitur permitted an inference of negligence against the owner of horses that had escaped onto a "closed stock" highway. To rely on the doctrine, the plaintiff must (1) present evidence that indicates at least a probability that the injury would not have occurred without negligence; (2) sufficiently exclude an inference of his or her own responsibility or the responsibility of others besides the defendant in causing the accident (although with comparative fault, the effect of the plaintiff's negligence is to reduce recovery and not relieve the defendant of liability); and (3) establish that the negligence falls within the scope of the duty to the plaintiff. Cangelosi v. Our Lady of the Lake Regional Med. Ctr., 564 So.2d 654 (La.1989) (on rehearing). In Granger, 819 So.2d 477, we found that the defendant had control of the horses, that normally two domestic horses would not be found on a closed range highway in the absence of negligence, and that the defendant's complicated latching system on his gate sufficiently negated the possibility that an unknown person permitted the horses to escape.
In the present case, Mr. Mayes testified that the cows were able to reenter his pasture through his fence, rather than through his gate. We find that this testimony, when considered with his other admissions of the animals escaping, permits an inference that his fence was not sufficient to contain his livestock.

Negligence of Mr. Marcantel
Mr. Marcantel argues that the trial court erred in assessing him with 75% fault, considering that he was faced with a sudden emergency of the presence of a cow on the road. However, as explained in Anderson v. May, 01-1031, p. 7 (La. App. 5 Cir. 2/13/02); 812 So.2d 81, 86 (footnote omitted):
The rule of sudden emergency cannot be invoked by one who has not used due care to avoid the emergency. The sudden emergency doctrine is applicable to the standard of conduct after an emergency has arisen. It does not apply to lower the standard of care required of motorists before the emergency occurs.
Given Mr. Marcantel's admission that he looked down to check his tape player before he saw the cow, we find no error in the trial court's conclusion that he should bear a greater percentage of fault in the cause of this accident. The evidence established that it was a clear day and that a white cow on a brown gravel road should have been easily seen. The trial court's apportionment of fault is affirmed.

Property Damages
In his oral reasons, the trial court stated that it denied Mr. Marcantel's claim *73 for property damages because Mr. Marcantel never had his vehicle repaired. Mr. Marcantel argues that this was error, given that he introduced an estimate and testimony that his vehicle needed $2,182.19 in repairs as a result of the accident. We agree.
In Rogers v. Commercial Union Insurance Co., 01-443 (La.App. 3 Cir. 10/3/01); 796 So.2d 862, this court found that the trial court properly awarded property damages based upon the estimated cost of repairs, where the defendants failed to offer any evidence as to the value of the car or their own estimate of repairs. We based that finding on the following language from Coleman v. Victor, 326 So.2d 344, 346-47 (La.1976) (emphasis added) (footnotes omitted):
When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage, it is well settled that the measure of damage is the cost of restoring the property to its former condition. In assessing damage to property, generally, courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired.... In our view, no mechanical rule can be applied with exactitude in the assessment of property damage under article 2315. Each case must rest on its own facts and circumstances as supported by the proof in the record.
The plaintiff in Coleman testified that her vehicle needed approximately $800.00 in repairs, but that she chose to sell it for $350.00 because she was unable to borrow the money to have it repaired. The supreme court held that the proper measure of property damages was the cost of repair, in the absence of any proof that the vehicle was a total loss.
In the present case, Mr. Marcantel offered the testimony of James Smith, who inspected and prepared an estimate of Mr. Marcantel's vehicle on the day after the accident. (Mr. Smith had been in the paint and body repair business for twenty-two years, and the trial court apparently accepted him as an expert, as it set an expert witness fee of $100.00.) Mr. Mayes did not challenge the accuracy of Mr. Smith's estimate or establish that the vehicle was totaled, but only questioned whether all damages were from this accident. Mr. Marcantel testified that his truck had no pre-existing damage, and he introduced pictures showing that most of the damage occurred to the left front, which was consistent with his description of the accident. In denying the claim, the trial court considered that the truck was never repaired; it did not comment on the accuracy of the estimate. Under these circumstances, we find the evidence clearly supports an award of property damages in the amount of the cost of repair, $2,182.19, subject to a reduction for Mr. Marcantel's percentage of fault.

Court Costs
Mr. Mayes argues that the trial court erred in assessing 25% of the court costs to him. However, in light of our affirmation of the trial court's allocation of fault, we find no error in the trial court's apportionment of court costs in accordance with the percentages of fault assigned.

Decree
For the above reasons, the judgment of the trial court in favor of Mr. Marcantel is amended to include an award of property damages in the amount of $545.55 $2,182.19 less 75% fault attributable to Mr. Marcantel). In all other respects, the judgment is affirmed. Costs of this appeal *74 are assessed one-half to Mr. Marcantel and one-half to Mr. Mayes.
AFFIRMED AS AMENDED.
NOTES
[1] Just as La.R.S. 3:3003 and the ordinances at issue here, La.R.S. 3:2803 provides that no one owning livestock shall "knowingly, wilfully, or negligently" permit his livestock to roam on certain public roads.