608 So.2d 282 (1992)
George MORALES and Janice Morales, Plaintiffs-Appellees,
v.
TETRA TECHNOLOGIES, INC. and Bob Richie, Defendants-Appellants/Appellees,
Berwick Bay Oil Company, Third Party Defendant-Appellant.
No. 91-747.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
Writ Denied January 15, 1993.
*283 Carmouche Firm, Terry Thibodeaux, Lake Charles, for defendant-appellant Tetra Technologies, Inc.
Roy, Carmouche, Bivins, Judice, Henke & Breaud, Robert A. Mahtook, Allen & Gooch, Randall Theunissen, Lafayette, for defendant-appellant Berwick Bay Oil.
Jones, Jones & Alexander, J.B. Jones, Cameron, for plaintiffs-appellees.
Before DOMENGEAUX, C.J., and LABORDE and PATIN[*], JJ.
DOMENGEAUX, Chief Judge.
George Morales, an employee of Berwick Bay Oil Company, injured his left knee when he fell in a pothole at Berwick Bay's dock in Cameron Parish. Morales and his wife sued Tetra Technologies, Inc., Berwick Bay's lessee, contending that Tetra's trucks and equipment created the hazardous condition. Tetra denied any liability for the accident and filed a third party demand for indemnity against Berwick Bay based upon the terms of the lease between those two parties.
The trial in district court was bifurcated, with the jury deciding the main demand and the judge deciding the third party demand. The jury found Tetra 100% at fault in the accident and awarded Morales $810,888.00 and his wife $25,000.00. The trial judge denied motions for judgment notwithstanding the verdict and motions for new trial filed by both Tetra and Berwick Bay, finding that the evidence sufficiently supported the jury's verdict. However, in deciding the third party demand, the judge disagreed with the jury's finding of fault and, instead, concluded that the accident was caused by Berwick Bay's negligence in failing to maintain the area where Morales fell. Based upon the terms of the lease between Tetra and Berwick Bay, the judge ordered Berwick Bay to indemnify Tetra for the full amount awarded to Morales. Both Tetra and Berwick Bay have appealed.
In March of 1984, Berwick Bay leased a portion of its Cameron dock facility to the defendant, Tetra Technologies, Inc. The lease essentially divided the dock area in half, with Berwick Bay retaining the western half and Tetra taking possession of the eastern half. Tetra, an oilfield service company that sells completion fluids and filtration systems, installed its own storage tanks on its portion of the dock. However, in its day-to-day operations, Tetra utilized portions of the dock facility that were outside of the leased area. Specifically, Tetra's trucks and those of its customers had to travel on a gravel road and on a gravel parking area that were on Berwick Bay's side of the dock.
*284 On August 28, 1988, Morales, Berwick Bay's dock manager, fell in a pothole in the gravel parking area on Berwick Bay's half of the dock. Morales testified that that pothole, as well as several others in the vicinity, was made by Tetra's trucks as they used the Berwick Bay parking area to access the storage tanks on Tetra's side of the dock. Morales testified that Berwick Bay did not have any 18 wheelers at its Cameron location and that its customers' trucks did not use that gravel area.
Peter Posada, a Berwick Bay employee at the Cameron dock, corroborated Morales' testimony that the pothole was caused by one of Tetra's trucks. He further stated that before Tetra leased the dock Berwick Bay did not have any problems with the gravel area. Timothy Alexander, a former Tetra employee, stated that Tetra's use of the facility created holes in the yard which Tetra would only temporarily correct.
Minos Gaspard, a Tetra employee, and Gerald Faulk, a Berwick Bay employee, testified that Tetra's trucks did use the parking area where Morales fell, even though that area was not within Tetra's leased premises. They further testified that Berwick Bay, and not Tetra, maintained that area, although Faulk stated that Berwick Bay expected Tetra to repair any damage it directly caused.
After trial on the main demand, the jury reached a verdict in favor of Morales, finding Tetra 100% at fault. In written interrogatories, the jury specifically rejected a finding of fault on the part of either Berwick Bay or Morales. In the third party demand, the trial court reached a different result, finding that the area where Morales fell was under the exclusive control of Berwick Bay and that Berwick Bay was negligent in failing to properly maintain the parking area.
The findings of the trial judge and the jury are clearly inconsistent. In a bifurcated trial, where the jury and the trial judge reach conflicting findings of fact and there is an appeal, the court of appeal should resolve these differences and render a single harmonized decision based upon the record as a whole. In such a situation, the manifest error rule is inapplicable, and the court of appeal must decide which decision is more reasonable after a careful examination of the record. Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3d Cir.1978), writ denied, 366 So.2d 564 (La.1979); Thornton v. Moran, 348 So.2d 79 (La.App. 1st Cir.1977), writ denied, 350 So.2d 897, 898 and 900 (La.1977).
After carefully reviewing the entirety of the record, we cannot agree with the trial judge that the parking area was under the exclusive control of Berwick Bay. It was undisputed that Tetra's 18 wheelers and those of its customers had to use this gravel area to reach Tetra's storage tanks, even though the parking area was not within the premises leased by Tetra. This arrangement was apparently contemplated by both Tetra and Berwick Bay when they entered into the lease. The record also supports a finding that Tetra was expected to repair any damage it may have caused.
A landowner or a possessor cannot escape liability for injuries occurring on adjacent property by the mere fact of his status as a nonowner. The question, like any other action under La.C.C. art. 2315, is whether the defendant was negligent in any manner. Hakim v. Albritton, 552 So.2d 548 (La.App. 2d Cir.1989).
George Morales, Peter Posada and Timothy Alexander all testified regarding the general deterioration of the parking area that occurred after Tetra began using it. Further, the only evidence of Berwick Bay's use of that area concerns a small 2-ton truck and forklift. Although Tetra produced evidence of at least three 18 wheelers that called on Berwick Bay shortly before the plaintiff's accident, Morales testified that those trucks did not use the parking area where he fell. This testimony is somewhat corroborated by a diagram of the entire dock area which shows that Berwick Bay's tanks are not located as near the parking area as are Tetra's. We find the evidence preponderates that the pothole was caused by Tetra's use of the parking area and that the condition of the parking *285 area posed an unreasonable risk of harm to the plaintiff.
Tetra alternatively argues that some degree of comparative fault should have been assessed to Morales. The jury specifically found that Morales was free from fault. In deciding the third party demand, the trial court did not address the question of Morales' comparative fault. Where there is no conflict between the judge and the jury verdict, findings of fact (such as a finding of fault) are reviewable under the clear error standard. Felice v. Valleylab, Inc., 520 So.2d 920 (La.App. 3d Cir.1987). After reviewing the entirety of the record, we find no error in the jury's conclusion that Morales was free from fault.
Tetra also argues that the trial court erred in failing to give the jury certain requested charges. After comparing those special charges with the general charges actually given, we find no error. The principles contained in Tetra's requested charges were adequately conveyed to the jury in the trial court's general charges.
Tetra also argues that the jury award to Morales was excessive. The jury itemized the award as follows:

Medical expensespast $ 18,000.00
Medical expensesfuture 10,000.00
Loss of wagespast 48,888.00
Loss of wagesfuture 400,000.00
Pain and suffering 34,000.00
Physical disability 300,000.00
 ___________
Total: $810,888.00

The trial judge made no finding as to the amount of damages sustained by Morales; hence, we are not presented with conflicting verdicts from the judge and the jury. The manifest error standard is therefore applicable to our review of the jury award. See Felice, supra.
Morales testified that as he fell, his knee jammed, then popped and gave out. He was treated by Dr. David Drez, an orthopedic surgeon. After removing 50 cc's of bloody fluid from Morales' knee, Dr. Drez ordered an MRI which revealed a tear of the meniscus cartilage. In the first of two arthroscopic surgeries performed on Morales, Dr. Drez sutured the torn cartilage and also noted that Morales had a tear of the anterior cruciate ligament. When Morales did not respond well after this first surgery, Dr. Drez conducted another arthroscopic examination which revealed a new tear in the meniscus as well as arthritic changes where the meniscus had been damaged. In August of 1990, two years after the accident, Dr. Drez observed swelling and catching in the knee, with muscle atrophy and tenderness along the inner aspect of the joint. Dr. Drez assigned Morales a 30% impairment of the lower extremity and considered Morales to be 100% disabled from any occupation which involved climbing, squatting, kneeling, or carrying heavy loads. In Dr. Drez's opinion, Morales would only be able to perform sedentary work in the future.
Allen Simmons, a vocational rehabilitation expert, evaluated Morales to determine his future employment prospects. Simmons testified that Morales' I.Q. was in the low average range. Although Morales performed well in tests for manual dexterity, he had marked deficiencies in reading comprehension. Morales expressed an interest in the electronics field, but Simmons testified that Morales' reading difficulties would have to be corrected before he could begin any retraining. Simmons stated more probably than not Morales would not be able to find a job in electronics. Simmons testified Morales had a better chance of finding sedentary work in Lake Charles, as opposed to Cameron, his home parish, but that his wages would only be between $3.80 an hour and $5.00 an hour.
Donald Cornwell was the plaintiff's economic expert. He testified that Morales sustained past lost wages of $48,888.76 through the date of trial. According to Cornwell, if Morales never worked again, he would sustain future lost wages of $455,146.00 over his work life expectancy of 20.62 years. If Morales secured a position in the electronics field making approximately $14,000 a year, then his future lost wages would be reduced by $177,416.00.
The defendant did not present any evidence to challenge the conclusions of the plaintiff's experts, both medical and economic. *286 The amounts awarded for future special damages, including future medical expenses and future lost wages, are clearly supported by the evidence. Dr. Drez's testimony establishes that Morales is 100% disabled from his former occupation and from any occupation involving manual labor. Although Morales can perform sedentary work, his educational limitations are an obstacle to any type of retraining. Considering the above, we find no error in the jurors' acceptance of Mr. Cornwell's testimony.
Although the award for general damages may be on the high side, we cannot say it is an abuse of discretion based upon the testimony in the record. In LeBleu v. Dynamic Industrial Constructors, Inc., 526 So.2d 1184 (La.App. 3d Cir. 1988), writ denied, 528 So.2d 154 (La.1988), we affirmed an award of $300,000 in general damages where the plaintiff sustained a broken ankle which produced complications that lasted over two years. In the instant case, Morales was still experiencing pain and swelling in his knee at the time of trial, and Dr. Drez testified that further deterioration, with future surgical intervention, could be expected. The plaintiff in LeBleu was an older man with only 5.17 years remaining in his work life expectancy. Morales, however, will be disabled throughout the 20.62 years remaining in his work life expectancy. Under the circumstances, we find no basis to disturb the jury award.
Tetra's third party demand against Berwick Bay was based upon the following paragraph in the lease it executed in 1984:
Lessor [Berwick Bay] and Lessee [Tetra] shall each indemnify, defend, and hold the other harmless from claims, demands, and causes of action asserted against the other by any third party (including, without limitation, Lessor's and Lessee's employees) for personal injury or death or for loss of or damage to property and resulting from the negligence or willful misconduct of the indemnifying party. When personal injury, death, or loss of or damage to property is the result of the joint negligence or willful misconduct of Lessor and Lessee, each party's duty of indemnification shall be in proportion to its allocable share of joint negligence or willful misconduct.
Under the terms of the lease, indemnity is only owed if there is a showing of negligence or willful misconduct on the part of the indemnifying party. The trial court ordered Berwick Bay to indemnify Tetra after finding Berwick Bay was negligent in maintaining the parking area. However, for the reasons discussed above, we cannot agree with the trial court's finding of negligence on the part of Berwick Bay. We have already determined that the more reasonable interpretation of the evidence adduced at trial is that reached by the jury. The plaintiff proved by a preponderance of the evidence that Tetra's trucks or those of its customers created the defective condition and that Tetra, and not Berwick Bay, had a duty to correct any damage it may have caused. The record does not support a finding of negligence on the part of Berwick Bay. Therefore, under the terms of the lease, Tetra is not entitled to indemnity from Berwick Bay.
For the above reasons the jury verdict in favor of George Morales and Janice Morales is affirmed; the trial court judgment in favor of Tetra Technologies, Inc. against Berwick Bay Oil Company is reversed. Costs of this appeal are assessed to Tetra Technologies, Inc.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[*] Judge John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.