651 So.2d 865 (1995)
Lester J. HASHA, et ux., Plaintiffs-Appellants-Appellees,
v.
CALCASIEU PARISH POLICE JURY, et al., Defendants-Appellees-Appellants.
No. 94-705.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1995.
Writ Denied April 28, 1995.
*867 Steven Broussard, Lake Charles, for Lester J. Hasha et ux.
Terry James Manuel, Lake Charles, for Calcasieu Parish Police Jury, et al.
Rick J. Norman, Lake Charles, for Dairyland Ins. Co., et al.
Adam L. Ortego Jr., Lake Charles, for Kathleen Bertrand, et al.
Before KNOLL, THIBODEAUX, and BERTRAND[*], JJ.
KNOLL, Judge.
This is an appeal from a bifurcated trial for a wrongful death, involving a one car accident. The jury and the trial judge agreed that the Calcasieu Parish Police Jury (Police Jury) and the decedent, James Hasha (James), the passenger of the vehicle, were liable and both found that James was 50% at fault in causing the accident. Nonetheless, they reached different conclusions about the percentages of fault attributable to the Police Jury; the jury assigned 50% fault to the *868 Police Jury and the trial judge assigned 25% fault to it. The triers of fact also reached different conclusions about the liability of the driver, Sylvia Duke (Sylvia); the jury found her not liable, whereas the trial judge found her liable and assigned her 25% fault. Furthermore, the triers of fact made greatly divergent awards of damages; the jury awarded the Hashas, the parents of James, $728,238 and the trial court awarded them $353,238.90. The Hashas and the Police Jury appeal liability and the inconsistent verdicts.
On May 10, 1985, James Hasha, the 18 year old son of Lester and Josette Hasha, borrowed his mother's 1981 Fiat Spider, a two-door convertible, to take his 14 year old girl friend, Sylvia Duke, riding. At the time of the accident, Sylvia was two weeks shy of her fifteenth birthday. After James and Sylvia rode around for awhile, James asked Sylvia to drive the automobile. Sylvia was initially reluctant because she was not a licensed driver, and she had never driven a vehicle with a manual shift. After James persisted, Sylvia agreed to drive with James doing the shifting. While driving, Sylvia would depress the clutch and James would shift the vehicle.
Shortly after taking the steering wheel, Sylvia proceeded onto Gauthier Road, a highly travelled, gravel road in the southern portion of Lake Charles. As Sylvia proceeded west of Nelson Road on Gauthier Road travelling near the 35 m.p.h. speed limit, she testified that she hit a bump, lost control of the vehicle, slid through loose gravel, and veered into a ditch. When the car hit the ditch, it turned over, pinned James underneath the car, and killed him.
The Hashas sued the Police Jury as the custodian of the gravel road, Kathleen Bertrand, the mother of Sylvia, a minor, and the Dukes' insurer, Dairyland Insurance Company. In supplemental petitions, the Hashas added the following defendants: Fiat Distributors, Inc., the manufacturer of the Spider; and Casualty Reciprocal Exchange Insurance Company, their uninsured motorist carrier.
Prior to trial, Dairyland deposited its policy limits into the registry of the trial court. Likewise, the Hashas either settled or dismissed their claims against Fiat and Casualty Reciprocal prior to trial. The bifurcated trial proceeded against the Police Jury, Kathleen Bertrand, and Sylvia, who was included as a defendant because she attained the age of majority prior to trial.
At the bifurcated trial, the jury decided Sylvia's liability as the driver of the vehicle, James' contributing fault, if any, and assessed the damages which the Hashas sustained. The trial judge decided the Police Jury's liability and independently determined the damages the Hashas suffered. By stipulation of the parties, the jury was allowed to assess a percentage of fault to the Police Jury, but agreed that the finding would not be binding since the trial judge had to decide that issue.
The Police Jury appeals, contending that the trial judge erred in: (1) finding that the Hashas proved by a preponderance of the evidence that a defect existed on Gauthier Road; (2) his conclusion that Gauthier Road was unreasonably dangerous; (3) finding that the condition of Gauthier Road caused the accident; and (4) finding that the Police Jury had either actual or constructive notice of a defect on Gauthier Road. The Police Jury further contends that the jury erred in finding Sylvia Duke free from fault and in awarding excessive damages.
The Hashas also appeal, contending that we should assess the issue of liability de novo since the jury's and the trial judge's findings of fault do not total 100% and are irreconcilable. They urge us to assign 100% of the fault to the Police Jury and to consider the 13 accident reports of other one-car accidents on Gauthier Road, erroneously excluded by the trial judge, as evidence of the Police Jury's notice of the road defect. They also urge us to adopt the jury's assessment of damages, since its award was not excessive, and unlike the trial judge's, contained all of the elements of damages proven by the evidence.

STANDARD OF REVIEW
Initially, the litigants disagree about the standard of review which we should use in our analysis of the lower court's verdicts. *869 The Hashas contend that we must conduct a de novo review; the Dukes urge us to adopt the judgment which is more reasonable; and the Police Jury hypothesizes that we should prorate the 25% fault left unaccounted since the judgments of the two factfinders only apportioned 75% fault, 50% to James and 25% to the Police Jury.
In a bifurcated trial where the jury and the trial judge reach conflicting findings of fact and there is an appeal, the court of appeal should resolve these differences and render a single harmonized decision based on the record as a whole. Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3rd Cir.1984), writ denied, 465 So.2d 737 (La.1985). In such a situation the manifest error rule is inapplicable and the court of appeal must decide which decision is more reasonable after a careful examination of the record. Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3rd Cir.1978), writ denied, 366 So.2d 564 (La.1979).
As succinctly stated in Bishop, supra, an appellate court is called upon to harmonize jury and trial court conflicts in bifurcated trials only when the jury and the judge reach conflicting findings of fact.
In the case sub judice, it is important that we first recall that the parties whose fault was before the jury for adjudication were only James Hasha and Sylvia Duke. As exhibited in the litigants' stipulation at trial, the jury's allocation of 50% fault to the Police Jury, a method approved by the Louisiana Supreme Court in Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984), was not binding on the trial judge. Commenting on a similar situation in Bishop, supra, we stated:
"[R]egardless of the jury's intention, it did not, as a matter of law, have the right or the duty to determine whether the [public entity] ... was at fault and, if so, the percentage thereof. LSA-R.S. 13:5105 clearly provides that, `No suit against the state or a state agency or a political subdivision shall be tried by jury.' Thus, as a matter of law, the jury verdict has no weight on the issue of the State's fault. Under this view, there is no conflict between the finding of fact by the jury and that by the judge on the issue of the State's fault."
Bishop, supra at 1174. Carrying this reasoning one step farther in the present case, the trial judge's consideration of the fault of Hasha and Duke, though sanctioned by Lemire, supra, was not binding on the jury and cannot conflict with the jury's adjudication of the fault of those parties. Thus,
"It follows that since there is no conflict between the triers of fact, there is no need for the Court of Appeal to harmonize in accordance with the jurisprudence discussed above. It also follows that in our appellate review of the facts found by the jury and the facts found by the trial judge the applicable rule will be the well established test of whether the trier of fact was clearly wrong."
Bishop, supra at 1174. Accordingly, we will use the manifest error standard in our review of the jury's finding of liability as to Hasha and its exculpation of Sylvia. Likewise, we will apply the manifest error standard in our analysis of the judge's conclusion that the Police Jury was also liable to the Hashas.
Nevertheless, we find that the assessment of damages by the jury and the trial judge are in conflict and must be harmonized. Hatcher v. State, Department of Transportation and Development, 478 So.2d 774 (La. App. 3rd Cir.), writ denied, 479 So.2d 923 (La.1985). Accordingly, we will examine the record to inquire which damage award is the more reasonable.

James Hasha's fault
The jury found James liable and allocated 50% fault to him. The Hashas contend that James was a guest passenger in the vehicle and that there was no evidence upon which the jury could have found James liable.
Although the passenger of an automobile ordinarily has no duty to supervise a driver, fault may be imposed where there is a joint venture, an independent negligent act by the passenger, or a showing that the rider had actual or constructive knowledge of a driver's incompetence or impaired ability to operate the vehicle. Sledge v. Continental *870 Cas. Co., No. 25,770 (La.App. 2nd Cir. 6/24/94), 639 So.2d 805. Moreover, a passenger can be held liable for allowing an unlicensed driver to drive if it is proven that such conduct is a cause in fact of the accident. Faulk v. Champagne, 590 So.2d 683 (La.App. 3rd Cir.1991). Negligent conduct is a cause in fact of harm if it was a substantial factor in bringing about that harm. Socorro v. City of New Orleans, 579 So.2d 931 (La. 1991).
The record shows that James was 18 years of age and knew that Sylvia was an unlicensed driver with little or no driving experience. Nevertheless, James insisted that Sylvia drive the vehicle on Gauthier Road, a highly travelled gravel road, even though she told him that she had never driven an automobile with a manual transmission. After reviewing the evidence, it is clear that: (1) James' actions were purposeful and not inadvertent; (2) his conduct in insisting that Sylvia drive created a great risk; (3) based on his knowledge as a licensed driver of the dangers of the road, his position was superior to that of Sylvia; (4) no extenuating circumstances required him to have Sylvia drive on this highly travelled gravel road; and (5) for reasons elaborated upon later in this opinion, Sylvia's inexperience as a driver was a cause-in-fact of this accident. As determined by the jury, and likewise in our evaluation of the record, the circumstances in the case sub judice support the conclusion that the actions of the passenger significantly contributed to the accident. Accordingly, we find no manifest error in the jury's determination that James was at fault.
Furthermore, since the Louisiana legislature's adoption of a pure comparative fault system in its enactment of LSA-C.C. art. 2323, it has been the task of the fact finder to allocate shares of negligence. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). Because each of the factors enunciated in Watson which may influence the respective degrees of fault are factual considerations, the manifest error/clearly wrong standard applies. Socorro, supra. Commenting further in Socorro, the Louisiana Supreme Court held that in reviewing the determination of proportionate fault, it is appropriate to compare the respective degrees of duty of the various parties and degree of causation in the parties' breach of their respective duties. Id. at 942. For the reasons assigned above, we cannot say that the jury's allocation of 50% fault to James is manifestly erroneous.

Sylvia Duke's Liability
The Police Jury contends that the jury was manifestly erroneous in its failure to find Sylvia, at least, partially at fault in causing this accident. We agree.
Elaborating recently on the manifest error doctrine, the Louisiana Supreme Court stated in Stobart v. State of Louisiana, Through DOTD, 617 So.2d 880, 882-83 (La.1993), as follows:
"... [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that `the reviewing court must always keep in mind that "`if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'"'"
This court has recognized that `[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate *871 functions between the respective courts.' Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." (Citations omitted).
The court in Snyder v. Bergeron, 501 So.2d 291, 294-95 (La.App. 1st Cir.1986), writ denied, 503 So.2d 483 (La.1987), addressed the issue of the unlicensed minor driver and stated:
"Clearly, La.R.S. 32:52 was enacted at least in part, to protect the motoring public by preventing inexperienced and incapable persons from operating motor vehicles on state highways. La.R.S. 32:52, in conjunction with La.R.S. 32:401 et seq., attempts to accomplish this goal, through training, testing and education. Drivers must acquire and demonstrate at least a minimal degree of driving competency before they can be licensed. A driver lacking these qualifications is a hazard to himself and others.
* * * * * *
R.S. 32:52 prohibits unlicensed persons from driving, or a licensed driver allowing an unlicensed driver to drive. R.S. 32:401 et seq. govern the regulation and granting of driver's licenses. R.S. 32:402.1 expresses a legislative desire to require every new applicant for a driver's license to have satisfactorily completed a driver education course; a minor must be at least 15 years old to apply for a license; parental permission is required and the license is probationary. R.S. 32:407.
The scheme encourages 14 and 15 year olds to learn to drive under proper supervision after acquiring a learners permit. R.S. 32:422. It is unlawful for a parent to allow his child to operate a motor vehicle even if the child is 15 or older, if the child is unlicensed. R.S. 32:417. It is implicit in this scheme that the legislature considers minors under the age of 15 too young, inexperienced and immature to drive. If the minor is 14 years old, he should learn how to drive with close, trained, supervision. R.S. 32:422."
Elaborating further on the effect of LSA-R.S. 32:52, we stated in Loveday v. Travelers Ins. Co., 585 So.2d 597 (La.App. 3rd Cir.), writ denied, 590 So.2d 65 (La.1991):
"The intent of this statute, at least in part, is to protect the motoring public as well as the unlicensed driver by preventing inexperienced and incapable persons from operating motor vehicles on public roads. It is implicit in this scheme that the legislature considers minors under the age of fifteen too young, inexperienced and immature to drive. The statute imposes a duty to prevent inexperienced minors from operating motor vehicles on public roads. However, if an unlicensed minor, despite his age, is a competent and experienced driver, then the risk of allowing him to drive is outside the scope of the risks that LSA-R.S. 32:52 was intended to protect against." (Emphasis added).
Id. at 601.
In finding Sylvia partially at fault the trial judge, who like the jury heard the evidence and was attentive to the witnesses, expressed this reasoning for his disagreement with the jury's failure to attach partial liability to Sylvia:
"Although Sylvia Duke was a minor, fourteen years of age, and should be held to a lesser standard of care as that of an adult, she was almost fifteen years of age, and at which time she would have been old enough to receive a permit to drive. Considering her age, her background, and intelligence, it appears that she indulged in gross disregard of her own safety. In the face of known, understood and perceived danger, she allowed James Hasha to convince her to drive knowing full well that she had no experience with a stick shift and with driving on this type of road. She also was the one who had traversed other washboarding conditions just prior to the accident in this instance, and rather than slowing up at the time or stopping the vehicle, she tried to steer the vehicle causing her to go out of control."
After fully examining the record, we find that the evidence establishes that Sylvia was also at fault in causing James' death in the automobile accident. Although Sylvia's testimony is brief, the record shows that she encountered washboarding immediately as she *872 turned onto Gauthier Road from Nelson Road. Despite this, she proceeded on Gauthier Road, knowing that she was not familiar with this automobile, did not know how to drive a manually shifted vehicle, and that gear control was being shared with her passenger, James. Furthermore, other than a very limited reference that she had only driven occasionally before the accident, the record is void of any evidence that she was an experienced driver. Clearly, the evidence on these issues is not in dispute. Accordingly, the only reasonable conclusion to be drawn was that due to her inexperience she lost control of the vehicle when she encountered washboarding on Gauthier Road. On this basis, we find that the limiting factors exculpative of the unlicensed driver enunciated in Loveday, supra, are not applicable herein. Therefore, we find that it was manifestly erroneous for the jury not to impose partial fault to Sylvia.
Since we find that the jury erred in not finding Sylvia partially liable for the accident which caused James' death, it now becomes our duty to assess the percentage of fault attributable to her actions. The factors considered in the determination of fault are well established in Watson, supra, and will not be repeated. From the outset, we find that Sylvia had a duty not to drive James' vehicle since she knew that she was unlicensed, had never driven a manual transmission, had not taken drivers education, and had no experience driving on gravel roads. Moreover, upon assuming the position of driver, Sylvia had a duty to maintain control of the vehicle. In light of these circumstances, we find that 25% of the fault is attributable to Sylvia.

Liability of the Police Jury
The Police Jury contends that the trial judge was manifestly erroneous in his determination that it was liable for the accident which caused James' death.
A parish has the same duty as the State to maintain public highways in a reasonably safe condition and remedy conditions that make the roadways unsafe. Michel v. Ascension Parish Police Jury, 524 So.2d 1369 (La.App. 1st Cir.), writ denied, 530 So.2d 567 (La.1988). The duty to remedy arises from knowledge of an unsafe condition on the highway. Before a parish may be held liable for an accident caused by a hazardous or dangerous condition on a roadway, it must be shown that it had actual or constructive notice of the condition and a sufficient opportunity to remedy the situation or at least warn motorists of its presence, and failed to do so. Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 427 So.2d 439, 429 So.2d 127, 134 (La.1983). A defect is some flaw or fault existing or inherent in the thing itself. Nicholes v. St. Helena Parish Police Jury, 604 So.2d 1023 (La. App. 1st Cir.1992), writ denied, 605 So.2d 1378 (La.1992). Whether a breach of this duty has occurred depends on the particular facts and circumstances of each case. Manasco v. Poplus, 530 So.2d 548 (La.1988). Additionally, it must be shown that the defective condition caused the accident. Valet v. City of Hammond, 577 So.2d 155 (La.App. 1st Cir.1991).
The findings by the trial judge in the case sub judice that Gauthier Road was defective, that the Police Jury knew of the defect but failed to repair it within a reasonable time, and that the defective gravel roadway was a substantial factor in causing the accident, are findings of fact which will not be set aside on appellate review absent manifest error. Id.
The Police Jury first attacks a factual finding of the trial judge. It contends that the evidence does not show that the defect, i.e., washboarding, existed on Gauthier Road in the vicinity of the accident.
Sylvia testified that she remembered hitting a bump in the road on Gauthier Road, just west of Nelson Road, that she tried to steer the automobile, but her attempts failed, and the car slid into the ditch. She was not able to provide many details about the accident.
James Guillory and his wife were the only eyewitnesses to the accident. Mr. Guillory stated that he was familiar with Gauthier Road and that he travelled it daily to and from work. He testified that when his vehicle was approximately 200 feet away, he saw Sylvia's automobile swerve to the left, then to *873 the right, and to the left again; he then saw the vehicle slide and abruptly turn over in the ditch. He commented that the movement he saw when Sylvia's automobile fishtailed was consistent with his experiences when his vehicle encountered washboarding.
Mr. Guillory further provided general testimony about the condition of Gauthier Road. As a resident who used the road daily, he stated that persons in his neighborhood would contact the Police Jury almost weekly because the road would get rough with washboarding. He confirmed that washboarding occurred in the area where Sylvia's accident took place. He further said that although the Police Jury would grade the road, washboarding would reappear time and time again. Moreover, he testified that he experienced washboarding on Gauthier Road, but that he never lost control of his vehicle.
Another person who traveled Gauthier Road regularly was Troy Frick. He stated that he lost control of his vehicle twice on this road, going into the ditch at least once; he attributed his loss of control to washboarding. He also said that he and a friend extricated a vehicle from the ditch; washboarding was the cause of the vehicle's loss of control. Mr. Frick further stated that he visited the Hasha accident scene the day after James died. Looking carefully at the condition of the road in the area of the accident, he identified washboarding on Gauthier Road.
Connie McDowell, a resident in a subdivision near the accident scene, also testified about the condition of Gauthier Road. She said that she attended a meeting with Jim Schooler, their police juror, to discuss the condition of this highly travelled road. She further testified that there were four or five areas where washboarding would develop on Gauthier Road. After the Police Jury would grade the road, washboarding would recur in the same areas.
Mark Couch, another subdivision resident in the vicinity of the accident, described washboarding on Gauthier Road in an area which would have encompassed the accident scene. He stated that washboarding was a commonly recurring problem and that it was not uncommon to see one car accidents in this stretch of Gauthier Road. He also stated that the road was in a severe state until the road was blacktopped several months after Sylvia's accident.
Several other witnesses who came to the accident scene offered testimony about the condition of Gauthier Road. Trooper Jeffrey Shields investigated Sylvia's accident. Although he did not find any severe washboarding in the 100 foot area he checked, he found signs that Sylvia's automobile was fishtailing and stated that washboarding can cause a vehicle to fishtail. He also acknowledged he checked the road only to the point where he found swaying marks on the road, and that there may have been washboarding beyond this point. Glen Viator, a fireman who went to the accident scene to render assistance, stated that he did not observe washboarding; however, contrary to the investigating officer's findings, Mr. Viator also did not observe any swaying marks in the road. Another fireman, A.J. Blanchette, acknowledged that he saw some washboarding effect near the accident, but that he did not classify it as severe. Also testifying was James M. Schooler, the police juror in whose district Gauthier Road fell. He saw the accident scene before the vehicle was cleared and the victim was removed. He testified that he examined the road and found it in perfect condition, even though he did see minor washboarding which he opined would not have affected anything.
Al Prater, the assistant director of public works for the Police Jury, testified about his responsibility of overseeing the maintenance of Gauthier Road. He testified that although Gauthier Road was graveled, it was a main traffic artery and was the most heavily travelled gravel road in the parish. Although Mr. Prater did not think that there was severe washboarding on Gauthier Road, he testified that this road was graded approximately every five days because of the effect of heavy traffic across it.
Finally, Lester Hasha, James' father, testified that he visited Gauthier Road on the day following the accident. He said that he walked east from the final resting place of *874 the Fiat, back toward Nelson Road; there he found 50 to 75 feet of washboard.
After reviewing the evidence, we find that the record well supports a finding that washboarding existed on Gauthier Road in the vicinity of the accident and that it presented a danger to motorists. Accordingly, we cannot say that the trial judge was manifestly erroneous in drawing these conclusions.
In an ancillary issue, the Hashas contend in their appeal that the trial judge erred in excluding the copies of the 13 other one-car accidents on Gauthier Road which they proffered into evidence to prove that the Police Jury had notice of the defect. Although we find that even without this evidence, the record overwhelmingly supports the Hashas' assertion that the Police Jury had either actual or constructive notice of the washboarding on Gauthier Road, we address their contention because we find that the trial judge erred in making this evidentiary ruling.
The general rule with regard to the admissibility of evidence of prior accidents is that it is admissible for the limited purpose of showing that the defendant had notice of defects or physical conditions which are dangerous. Burk v. Illinois Central Gulf R.R. Co., 529 So.2d 515 (La.App. 1st Cir.1988). Nevertheless, the party seeking to introduce evidence of prior accidents must show that the prior accidents involve substantially the same circumstances or conditions which caused the accident at issue. Id.
Both experts who testified at trial, Duaine Evans for the Hashas and Joseph Blaschke for the Police Jury, stated that police reports of prior accidents on a particular road are useful tools in alerting the public entity of a potential problem with the road condition. Al Prater, the assistant public works director for the Police Jury, testified that he oversees road maintenance for the Police Jury. He stated that he receives copies of all State Police reports of accidents which occur on parish roads and that he reviews them looking for problems on the roadways under his supervision.
After reviewing the 13 proffered accident reports on Gauthier Road, we find that 12 of them designate defects of the gravel road under the section entitled, Roadway Conditions. Although the reports do not particularize washboarding as a specific defect, the various reports refer to holes, bumps or loose surface material. In addition, many reports show that a contributing factor to the accident was either the road surface or road condition. On this basis, we find that the Hashas showed sufficient similarity in the circumstances to establish a connexity of the reports to the accident in the case sub judice. Accordingly, we find that the trial judge should have allowed the Hashas to introduce these accident reports into evidence. Our inclusion of this evidence further buttresses the trial judge's determination that a defect existed in the roadway and that it posed an unreasonable risk of harm to the motoring public.
The Police Jury next contends that the evidence does not support that wash-boarding caused the accident.
Causation must be proven by a preponderance of the evidence. Townsend v. State Through La. Dept. of Transp., 322 So.2d 139 (La.1975). In Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, 302 (1962), cause in fact was explained as follows:
"Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm ... [T]he negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence ... then his negligence was not a substantial factor or cause-in-fact ..." (Footnotes omitted).
In Ganey v. Beatty, 391 So.2d 545, 547 (La. App. 3rd Cir.1980), writ denied, 396 So.2d 1325 (La.1981), we stated:
"To determine cause-in-fact, courts will carefully scrutinize all the evidence, and those acts will be adjudged causes-in-fact when it is found that more probably than not they were necessary ingredients of the accident. Stated otherwise, an act will be *875 deemed a cause-in-fact of an accident only when, viewed in the light of all the evidence, it is concluded that it is a substantial factor without which the accident would not have happened." (Emphasis added).
In the case sub judice, two experts testified in the area of traffic engineering and accident reconstruction. Duaine Evans testified for the Hashas and Joseph D. Blaschke for the Police Jury.
Mr. Evans stated that he visited the scene several weeks after the accident. He located the final resting point of the Hasha vehicle in the ditch, measured back 90 feet (the point where Trooper Shields noted the beginning of the swaying [yaw] marks), and then went farther back 52 feet. He measured back before the yaw mark because it was his opinion that Sylvia would have lost control of the car before the car began to swerve. Although he did not find washboarding in the 90 foot area between the beginning of the sway marks and the final resting place of the vehicle, he stated that he found washboarding in the 52 foot area preceding the sway marks.
Mr. Evans testified that washboarding can cause an automobile to begin bouncing and to fishtail. He stated that although washboarding will not cause every vehicle to go out of control, light vehicles, such as Hasha's Fiat Spider, are more greatly affected by this road condition.
Mr. Evans further testified that a heavy volume of traffic and rainy weather can cause washboarding to recur in the same areas unless it is properly maintained. Mr. Evans noted that the Police Jury records showed that Gauthier Road was graded once every five days between January and June 4, 1985. He opined that this high frequency of grading was indicative that there was something wrong with the foundation of the road and that road grading was insufficient to correct the problem. In support of his opinion, Mr. Evans relied upon the Police Jury's maintenance manual which provides in part that once washboarding forms repeatedly and becomes a major road problem, the only method for correcting the situation requires scarifying, reshaping of the road, and recompacting. As described by Mr. Evans, scarifying is a plowing operation where teeth on a grader blade dig into the road surface to cut off any irregularities, i.e., the washboard corrugations, redistributes the soil, and recompacts the surface.
Based on the Police Jury's work records on Gauthier Road and the testimony about washboarding by neighbors, he opined that washboarding was present on the day of the accident and that it was washboarding that caused Sylvia to lose control of the vehicle. As stated by Mr. Evans, his opinion in this regard was buttressed by the testimony of Robert Guillory, an eyewitness to the accident, that he observed Sylvia's automobile fishtailing before striking the ditch.
Mr. Blaschke, the Police Jury's expert, disagreed with Mr. Evans' opinion that washboarding caused the accident. He initially opined that he saw no proof of washboarding on Gauthier Road at the time of the accident. In support of his opinion, he noted that Mr. Evans did not view the road until three weeks after the accident and that Sylvia Duke and the persons on the scene did not describe any washboarding within 90 feet of the final resting place of the vehicle. Moreover, even if there was washboarding, he opined that washboarding would not cause loss of control problems unless the corrugations were at least 3 inches deep and that it is a rarity for vehicles to lose control because of washboarding. On cross-examination, he stated that even if the witnesses correctly perceived washboarding, the evidence did not show corrugations which were as deep as 3 inches.
Mr. Blaschke further stated that the road was graded three days prior to the accident and that grading is an acceptable method for temporarily curing the problem of washboarding. Instead of washboarding, Mr. Blaschke opined that the Hasha vehicle went out of control because of driver error. He concluded that Sylvia Duke, an inexperienced driver, oversteered and that it was this action which caused her to lose control of the vehicle. Unlike the opinion of Mr. Evans, Mr. Blaschke stated that fishtailing can happen without washboarding.
*876 After carefully considering the evidence, we find that the trial judge was not manifestly erroneous in his conclusion that washboarding was a cause-in-fact of the accident.
Accordingly, after considering the various arguments which the Police Jury advances, we find no manifest error in either the trial judge's ultimate conclusion that the Police Jury was at fault in causing the accident which resulted in James' death or his apportionment of 25% fault to the Police Jury.

DAMAGES
We next consider the issue of damages. Since the jury's and the trial judge's assessments of damages are in conflict, we must harmonize them by examining the record to inquire which award of damages is more reasonable. Felice v. Valleylab, Inc., 520 So.2d 920 (La.App. 3rd Cir.1987), writs denied, 522 So.2d 562, 563 (La.1988).
Survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. Wrongful death actions do not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. On the other hand, survival damages are in the nature of a succession right and permit the beneficiaries to recover those damages suffered by the victim from the time of injury to the moment of death. Taylor v. Giddens, 618 So.2d 834 (La.1993). The elements of damage of wrongful death are loss of love and affection, loss of services, loss of support, medical expenses, and funeral expenses. Pierre v. Lallie Kemp Charity Hosp., 515 So.2d 614 (La.App. 1st Cir.1987), writ denied, 515 So.2d 1111 (La.1987). Additionally, the courts have allowed damages in wrongful death actions for mental pain, suffering, and distress resulting from the death of the victim. Bergeron v. Blake Drilling & Workover, 599 So.2d 827 (La.App. 1st Cir.1992), writs denied, 605 So.2d 1117, 1119 (La.1992).
In the case sub judice, the jury awarded a total of $728,238.00 and categorized its award as follows:

- Decedent's conscious pain and suffering $ 75,000.00
- Lester Hasha's loss of love, affection
and consortium of his son $150,000.00
- Lester Hasha's past, present, and future
grief and mental anguish from
the loss of his son $175,000.00
- Funeral and Ambulance expense $ 3,238.00
- Josette Hasha's loss of love, affection
and consortium of her son $150,000.00
- Josette Hasha's past, present, and future
grief and mental anguish from
the loss of her son $175,000.00
The trial judge awarded a total of $353,238.90 and categorized
his award as follows:
- Decedent's conscious pain and suffering $ 50,000.00
- Lester Hasha's loss of love and affection
and wrongful death of his son $150,000.00
- Josette Hasha's loss of love and affection
and wrongful death of her son $150,000.00
- Funeral expenses/Ambulance $ 3,238.90

The testimony of Sylvia and Mr. Guillory vividly described the pain and suffering James endured for approximately 15 minutes before he died. He cried out in pain, asking for help because he could not breathe. During this time, he was pinned beneath the vehicle, with the weight of the automobile on his body, a deep wound having cut into his neck and shoulder. He died pinned beneath the vehicle.
The record establishes that the Hashas had a close, loving relationship with James, that his death has caused them a great loss, and that their lives have dramatically worsened as a result of his death. Although he was 18 years of age at the time of his death, he lived at home. He and his father often worked together at the home and had completed a home remodeling project. The Hashas camped together, and went on many fishing and hunting trips. Mrs. Hasha described James as her best friend. Mr. Hasha stated that he was particularly anguished because James was the last Hasha male to carry the Hasha name in his family and that with James' death, the Hasha lineage ceased.
Based on this record, we find the jury's award of $325,000 for each parent and $75,000 for survival damages more reasonably compensates the Hashas for the loss of their son than the trial judge's award.

DECREE
For the foregoing reasons, the judgments of the trial court finding James Hasha and *877 the Calcasieu Parish Police Jury liable, and apportioning 50% and 25% fault, respectively, are affirmed.
It is hereby ORDERED, ADJUDGED, AND DECREED that the jury verdict finding Sylvia Duke free from fault is reversed and set aside and she is found 25% at fault.
It is FURTHER ORDERED, ADJUDGED, AND DECREED that judgment is hereby rendered in favor of LESTER J. HASHA AND JOSETTE HASHA, and against Sylvia Duke and the Calcasieu Parish Police Jury, with Sylvia Duke being found 25% at fault in causing plaintiffs' damages, and the Calcasieu Parish Police Jury being found 25% at fault in causing plaintiffs' damages, and the plaintiffs' son, James Hasha, being found comparatively 50% at fault in contributing to the plaintiffs' damages.
It is FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of LESTER J. HASHA in the sum of ONE HUNDRED SIXTY-TWO THOUSAND FIVE HUNDRED and NO/100 ($162,500.00) DOLLARS (the amount of total damages allocated to him $325,000.00, less 50% for comparative fault), against SYLVIA DUKE AND THE CALCASIEU PARISH POLICE JURY, severally liable, with no defendant responsible for greater than 25% of the recoverable damages, plus legal interest from date of judicial demand, until paid.
It is FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of JOSETTE HASHA in the sum of ONE HUNDRED SIXTY-TWO THOUSAND FIVE HUNDRED and NO/100 ($162,500.00) DOLLARS (the amount of total damages allocated to her $325,000.00, less 50% for comparative fault), against SYLVIA DUKE AND THE CALCASIEU PARISH POLICE JURY, severally liable, with no defendant responsible for greater than 25% of the recoverable damages, plus legal interest from date of judicial demand, until paid.
It is FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of LESTER J. HASHA AND JOSETTE HASHA in the sum of THIRTY-NINE THOUSAND ONE HUNDRED NINETEEN AND NO/100 ($39,119.00) DOLLARS (the amount of total damages awarded to them for wrongful death, $75,000.00, and funeral expenses, $3,238.00, less 50% comparative fault), against SYLVIA DUKE AND THE CALCASIEU PARISH POLICE JURY, severally liable, with no defendant responsible for greater than 25% of the recoverable damages, plus legal interest from date of judicial demand, until paid.
Costs of trial and this appeal are assessed to all parties in proportion to their fault.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
THIBODEAUX, J., concurs with reasons.
THIBODEAUX, Judge, concurring.
I concur in the result reached by the majority. I write separately, however, to express the view that the proper methodology is a de novo rather than a manifest error review.
The trial judge's verdict as to those parties over whom he had to decide liability, the Calcasieu Parish Police Jury and James Hasha, reached a seventy-five (75%) percent level of liability, because he did not have the right to adjudicate Sylvia Duke's fault which he assessed at twenty-five (25%) percent. On the other hand, the jury assessed a total of fifty (50%) percent liability against Sylvia Duke and Hasha, the parties whose liability it judged.
Louisiana Code of Civil Procedure Article 1841 defines a judgment as "the determination of the rights of the parties in an action..." The parties in all legal proceedings have the expectation that their rights will be fully determined. That objective is not accomplished when a judgment fails to achieve this. It is invalid as a matter of law. As Ourso v. Grimm, 630 So.2d 963, 966 (La.App. 3d Cir. 1994), pointed out, the percentage of fault in a comparative fault system must always equal 100%. When it does not, as in this case, then a reversible error of law has been committed and "... when the court of appeal finds that a reversible error of law ... was made in the trial court, it is required to *878 redetermine the facts de novo from the entire record and render a judgment on the merits." Rosell v. ESCO, 549 So.2d 840, fn. 2 (La.1989). (Citations omitted).
The holdings in our circuit on the proper analytical tool to employ in reconciling conflicting verdicts in a bifurcated trial are inconsistent and confusing. White v. Frenkel, 615 So.2d 535 (La.App. 3d Cir.1993) Morales v. Tetra Technologies, 608 So.2d 282 (La. App. 3d Cir.1992), writ denied, 610 So.2d 818 (La.1993), and Bishop v. Shelter Insurance Co., 461 So.2d 1170 (La.App. 3d Cir.), writ denied, 465 So.2d 737 (La.1985) conclude that where inconsistent findings are reached, an appellate court should resolve those differences and reach a single harmonized decision based on the record as a whole and then adopt the more reasonable decision. The manifest error rule is inapplicable, these cases hold. Ourso, supra, suggested that the manifest error rule should be applied to review the findings of the trial judge and then the judgment should be amended to reflect 100% fault. This methodology conflicts with the procedure employed in White, Morales, and Bishop and also denies the plaintiff his right to a jury trial. The confusion is made more evident by the observation that the judge who authored Ourso also authored Morales.
The analysis suggested by the majority only adds to the disorder. It uses a seemingly hybrid approach. Liability is judged by the manifest error standard of review which White v. Frenkel, Morales v. Tetra Technologies, and Bishop v. Shelter Insurance Co., all say is inapplicable. In the assessment of damages, the standard which adopts the "more reasonable decision" is employed. The case relied on by the majority, Hatcher v. State Department of Transportation and Development, cited Thornton v. Moran, 348 So.2d 79 (La.App. 1st Cir.), writ denied, 350 So.2d 897 (La.1977). Thornton, in turn, was cited approvingly in Bishop v. Shelter Insurance Co. and Morales v. Tetra Technologies, Inc., supra which eschewed the manifest error application. In my view, the only practical and legally sound procedure susceptible of uniform application is a de novo review.
For the foregoing reason, I concur.
NOTES
[*] Judge Lucien C. Bertrand, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.